## GRAHAM *v.* GENEVA LAKE CRAWFORD MANUF'G CO.

*(Circuit Court, E. D. Wisconsin.    May 10, 1881.)*

1. PATENTS FOR INVENTIONS—DAMAGES FOR INFRINGEMENT—LICENSE FEE.
    Where a patentee does not desire to retain a close monopoly of his invention, the amount of the license fee which he has fixed in his dealings with other parties may be considered a proper compensation in damages, where the character of the infringement does not justify exemplary damages.

2. SAME—NOMINAL DAMAGES.
    Although the questions may be close, still it is manifestly wrong, his invention appearing to be valuable, that a patentee should only be allowed nominal damages against an infringer.

3. SAME—AGREEMENT TO SECURE INTRODUCTION OF PATENTED MACHINE.
    Agreements made to secure the manufacturer an introduction of a patented machine are not to be considered as unqualified licenses fixing a royalty or license fee, which can be accepted as establishing, within the language of the court in *Seymour* v. *McCormick*, 16 How. 480, the average of actual damages sustained by a patentee when his invention is used without license.

4. SAME—RATE OF ROYALTY.
    Where a license under letters patent provides for the payment of a royalty of five dollars a machine, but subject to a reduction of three dollars if paid promptly, etc., it will, on the question of assessing damages against a third party, be considered as establishing a royalty at the lower rate.

5. SAME—REVOKED OR ABANDONED LICENSE.
    Where the question is close, a revoked or abandoned license may be considered as throwing light upon the value which an inventor has put upon the right to manufacture his patented machine.

6. SAME—ALLOWANCE OF INTEREST.
    In this case the court reduces the amount reported by the master from five dollars to three dollars a machine, but *allows interest* from the date of the interlocutory decree establishing the patent and the fact of infringement.

In Equity.
*Banning & Banning,* for complainant.
*Flanders & Bottum,* for defendant.

DYER, J.   In cases like this the theory of the law is that the complainant shall recover the *actual* damages which he has sustained by reason of the infringement.   In arriving at such damages it is held that where the patentee does not desire to retain a close monopoly of his invention, the amount of the license fee which he has fixed in his dealings with other parties may be considered a proper compensation in damages where the character of the infringement does not justify exemplary damages.   I have examined with care all the cases cited in which the rule just stated is enunciated, and uniformly they are cases where the license fee or royalty was fixed without question by the patentee, and was well established; and the difficulty in the present case is in determining whether Graham had an established price for a license, while the defendant was manufacturing and selling its infringing machine, which can be adopted as a measure of actual damages within the principle laid down by the authorities.   This is the pinch of the case, and I have been not a little perplexed to know just what the court should do in disposing of the exceptions to the master's report.   Undoubtedly the complainant should not have his claim reduced to nominal damages.   That, I think, would be manifestly wrong.   Not much satisfactory light can be extracted from the Waterman and Waterman & Bloom contracts. The two contracts first made have been lost, and cannot be produced. The one of date January 29, 1870, is in evidence.   They all, according to the evidence, provided for the payment of a royalty of $10 on each machine, but they appear to have contained various provisions and qualifications to cover contingencies, which materially affected their character as licenses, by which an absolute license fee was fixed. The contract in evidence contains numerous conditions, intended, evidently, to secure the introduction to public notice and use of the Graham invention, and providing for the return to Waterman of certain proportions of the royalty upon the happening of certain contingencies.   And I am inclined to look upon all of these agreements made with Waterman and Waterman & Bloom as rather partaking of the nature of efforts to secure the manufacture of the machine and its introduction into public use than as unqualified licenses fixing a license fee which could be accepted as establishing, within the language of the court in *Seymour* v. *McCormick,* 16 How. 480, the average of actual damages sustained by the patentee when his invention should be used without his license.

By the arrangement with the Bloomington Company, which was verbal, it is said that a royalty of $10 was to be paid; but nothing was ever done by that company, and nothing was ever realized by Graham.   By the agreement with the Wayne Agricultural Company, a royalty of three dollars was to be paid, and the license included something more than the invention in question.   Nothing was done under this license, and it was afterwards revoked.   By the license granted to the Ann Arbor Agricultural Company, a royalty of five dollars was

to be paid, subject, however, to a reduction to three dollars if the company should faithfully perform the contract on its part, and should make prompt payments as the contract requires. This license is understood to be now in force, and it is evidently the license upon which complainant's counsel depends as establishing a license fee of five dollars, and upon which the master also relied in adopting that amount as measuring the complainant's damages. It is to be observed, however, of this license that it was granted pending this suit, and therefore it can hardly be claimed that it proves a license fee established before this case was commenced, and while the defendant was infringing. However that may be, the question is whether, if the complainant has established a license fee at all which should govern in the present controversy, it may not be said to be three dollars with as much force as it may be said to be five dollars. As we have seen, the license to the Wayne Company provided for a royalty of three dollars. True, it was revoked and abandoned, and it has been held that the price for which an inventor in a single instance may have sold his right to certain territory is not a criterion by which to determine the value of his patent, or the damages sustained from its infringement. But in a case like the present, where it is a close question whether it can be said that the patentee has established a fixed and positive license fee or royalty at all, it seems to me that this license may be looked at as throwing light upon the value which the inventor has put upon the right to manufacture his machine, so far as it is to be considered in disposing of the present case. Further, we find that by the license to the Ann Arbor Company the royalty of five dollars is subject to be reduced to three dollars if the company performs its contract, and the legal presumption is that the company will perform. Now, in view of this state of the case, has not the patentee really established three dollars as his license fee as effectually, for present purposes, as it may be said he has established five dollars as such fee, and even more effectually? I admit that, upon the facts presented, any course of reasoning by which a conclusion may be sought on this question of damages is not very satisfactory. In other words, it is not easy in such a case as this to determine what is precisely just and right between the parties; but, on the whole, I have concluded to somewhat reduce the amount which the master has allowed. I will put the license fee on each machine at three dollars, as, in the light of the evidence before me, most nearly measuring or approximating the compensation in damages to which the complainant is entitled. And in arriving at this conclusion I take also into consideration the fact that a large number of the machines in question were not manufactured by the defendant, but were purchased for sale from other manufacturers.

The master has found that the defendant has manufactured 747 machines, and has sold 823 machines manufactured by other parties, all of which infringe complainant's patent, making in all 1,570 machines to be included in an estimate of damages. The 216 other

machines spoken of in the master's report are not here considered or included. A royalty or license of three dollars on each machine, if paid on 1,570 machines, would make an aggregate of $4,710, and on that sum I shall also allow interest at 7 per cent. from the date of the entry of the interlocutory decree, which was October 11, 1880. Such interest amounts to $192.29, so that the total amount to be allowed is $4,902.29. To the extent thus indicated the exceptions to the master's report will be sustained, and decree accordingly.

NOTE. In the case of *Graham* v. *McCormick*, Northern district of Illinois, decided April 17, 1885, unreported, Judge GRESHAM confirmed a master's report as to the allowance of three dollars a machine under this same patent, but set it aside as to an allowance of interest from the date of the decision sustaining the patent and charge of infringement. The decree entered in the *McCormick Case* amounted to $85,351.