## UNITED NICKEL CO. *v.* CENTRAL PAC. R. CO.

*(Circuit Court, N. D. California. 1888.)*

**1. PATENTS FOR INVENTIONS—INFRINGEMENTS—NICKEL-PLATING.**
　　Claims 1 and 4 of letters patent No. 93,157, granted August 3, 1869, to Isaac Adams, Jr., for an "improvement in the electro-deposition of nickel," describing the process and product of nickel-plating by means of a solution of the double sulphate of nickel and ammonia, or of the double chloride of nickel and ammonium, prepared and used in such manner as to be free from presence of potash, etc., or any acid or alkaline reaction, is infringed by the use of any solution chemically equivalent thereto, in the manufacture of the product described.

**2. SAME—ACTION FOR INFRINGEMENT—DEFENSES.**
　　It is no defense to an action for infringement of letters patent for an improvement in the electro-deposition of nickel, covering a process by means of certain solutions, and the product, that the defendant has become possessed of the solution he is using by purchase or otherwise, without obtaining a license so to use the same.

**3. SAME—MEASURE OF DAMAGES—LICENSE FEE.**
　　As evidence of the damage sustained by an infringement of a patented process, the prices fixed by plaintiff and voluntarily paid for licenses to use the

patented process are competent, but not prices or payments made in settlements of infringement claims, where the parties were liable to suit if they had not paid.

At Law. Action for damages for infringement of letters patent.

*Scrivner & Boone*, for plaintiff.

*M. A. Wheaton*, for defendant.

Ross, J., (*charging jury*.) The defendant is charged in this case with the infringement of the first and fourth claims of letters patent No. 93,-157, granted to Isaac Adams, Jr., (plaintiff's assignor,) on the 3d of August, 1869, for an "improvement in the electro-deposition of nickel." The claims of the patent that are said to have been infringed are as follows:

"(1) The electro-deposition of nickel by means of a solution of the double sulphate of nickel and ammonia, or a solution of the double chloride of nickel and ammonium, prepared and used in such a manner as to be free from the presence of potash, soda, alumina, lime, or nitric acid, or from any acid or alkaline reaction."

"(4) The electro-plating of metals with a coating of compact, coherent, tenacious, flexible nickel, of sufficient thickness to protect the metal upon which the deposit is made from the action of corrosive agents with which the article may be brought in contact."

In the present case, as in other cases, the plaintiff must prove the material allegations of the complaint. It must show a valid patent, that defendant has infringed it, and the amount of damages plaintiff has suffered by reason of such infringement. In respect to all of those matters the burden of proof is on the plaintiff. But the patent in question, having been produced, is *prima facie* evidence that plaintiff's assignor first made the discovery claimed by him as an invention, and that it did in fact constitute a new and useful improvement in the electro-deposition of nickel. The *prima facie* case thus made out in favor of the validity of the patent is not overcome by any other evidence introduced, and you would not be justified in coming to any other conclusion than that the patent issued to the plaintiff's assignor in 1869 was in all respects valid. Indeed, it has been frequently so adjudged by the courts of the United States, and its validity is in the present case not contested by the defendant. Your real inquiries will therefore be limited, first, to the question of infringement; and, in the event of your finding that there was an infringement, then, next, to the question of damages.

You will have observed that the patent contains five claims, the third of which relates to the methods "for preparing the solution of the double sulphate of nickel and ammonia, and the double chloride of nickel and ammonium." It is not contended by plaintiff that there has been any infringement of this last-mentioned claim on the part of defendant. Some testimony has been introduced tending to show that defendant became possessed of one of the solutions referred to in the third claim of the patent, that is to say, the solution of the double sulphate of nickel and ammonia; but the fact, if fact you shall find it to be, that defendant did become possessed of that solution, either by purchase of the solution

itself or of the ingredients of which it is composed, and itself prepared the solution, did not confer on defendant the right to use the solution in the process described in the first, or in the product or manufacture described in the fourth, claim of the patent, without obtaining a license so to do. Each claim is, in effect, a separate and distinct patent. The first secures to the patentee and his assigns "the electro-deposition of nickel by means of a solution of the double sulphate of nickel and ammonia, or a solution of the double chloride of nickel and ammonium, prepared and used in such a manner as to be free from the presence of potash, soda, alumina, lime, or nitric acid, or from any acid or alkaline reaction," and the fourth claim secured to the patentee and his assigns "the electro-plating of metals with a coating of compact, coherent, tenacious, flexible nickel, of sufficient thickness to protect the metal upon which the deposit is made from the action of corrosive agents with which the article may be brought in contact." Neither of these two last-mentioned claims, that is to say, the first or fourth, are in any way covered or embraced by that describing the methods for preparing the solutions referred to in the third, which, as has been said, is of itself a separate and distinct invention. If, therefore, you find from the evidence that defendant used the process described in the first claim, or manufactured the product described in the fourth claim, of the patent, you will find the question of infringement against the defendant.

Nor can the plaintiff's patent be defeated by evasion,—that is to say, by any mere colorable or unsubstantial change in the process or mode of bringing about the same result. Upon this point the language of Mr. Justice BLATCHFORD in a case involving the infringement of the same claims of the same patent now before you,[1] is very instructive. In that case the defendant claimed to have used, in the process of nickel-plating, a solution essentially different from that covered by the Adams patent. The judge said:

"Practical nickel-plating, as an art, has its origin in the Adams patent. Before that, because of the properties of nickel, it had been suggested that successful, practical nickel-plating would be a very useful invention. The invention made by Adams, and set forth in his specifications, covers the art of nickel-plating as now practiced. Before Adams, persons trying to plate with nickel proceeded as with gold, silver, and other metals, and failed. Adams discovered that it was necessary to avoid in nickel-plating the use of either what was not hurtful or was beneficial in other plating, and pointed out clearly what must be avoided. He mentions certain solutions which he says will give the best results of any solutions then known. He describes in detail the mode of preparing those solutions so as to get rid of the injurious substances. His invention applies to all nickel-plating solutions which act electro-chemically, like the solutions he mentions; for the facts he mentions are true of all such solutions. It applies to the defendant's solution, for that is the equivalent, electro-chemically, as regards nickel-plating, of the solutions mentioned by Adams. The defendant's solution is amenable to the same laws, and, in order to give the best results, must be used under the same conditions, and be free from the same impurities, and be made and used according to the principles laid down by Adams. Before Adams, no product possessing the properties

[1] Nickel Co. v. Pendleton, 15 Fed. Rep. 739.

described by him as those of his product was known. He introduced a new process, that of claim 1, as well as a new product or manufacture, that of claim 4. In attempts at nickel-plating before, acids had been used, which were known solvents of nickel. Adams used those acids to prepare his solutions. When he speaks of acid reaction in his specification, and in claim 1, he must be regarded as referring only to the acids he had spoken of as used to clean the article to be coated, or as solvents of nickel, namely, nitric, sulphuric, and hydrochloric acids. Those are the acids which he mentions as used to make salts of nickel, the metal being dissolved in the acids. Hence the acid reaction spoken of by Adams involves only the mineral acids referred to by Adams; those being the acids, and the only acids which could get into the solutions referred to by Adams, or into any plating solutions then known. Adams did not invent these solutions of claim 1. He showed how to prepare and use them successfully. The solution is the vehicle whereby the nickel is conveyed from the anode to the cathode, holding in suspension the nickel to be deposited, and supplying the place of the deposited nickel by taking other nickel from the anode. The real invention was in discovering the proper conditions for the use of such vehicle, not the particular chemical composition of the vehicle. Any proper vehicle used with those conditions would do the work. Any vehicle in the use of which those conditions should not be observed would not do the work. The actual chemical composition of the solution, so long as it should be a good working solution, was and is unimportant. The only material points was its freedom from the injurious constituents indicated by Adams. In this view, the defendant's solution is an equivalent, in the sense of the patent law, for the solutions of claim 1. It accomplishes the same results by the same electro-chemical mode of operation, by the same process, with the absence of the same injurious elements."

In the light of these instructions, it is for you, gentlemen of the jury, to say from all of the evidence in the case, whether the defendant used one of the solutions referred to in the third claim of the patent, or some other solution, the chemical equivalent of it, in the process described in the first claim, or in the manufacture of the product described in the fourth claim, of the patent; in other words, whether the alleged infringement has been established against the defendant. If defendant did not use either of the solutions mentioned in the claims of the patent, or any other solution chemically equivalent thereto in its process of manufacturing the nickel-plating in question; in other words, if the plating of the defendant was produced by means of a solution and a process essentially different from the solutions and process protected by the patent,— then, and in that case, I charge you that there has been no infringement of the patent on the part of the defendant. Those matters of fact will be for you to determine in view of all the evidence before you. If you find the question of infringement against the defendant, it will remain for you to consider the question of damages. If there has been an infringement, plaintiff is entitled to nominal damages at least, which, as you are doubtless aware, is considered one cent or one dollar; but if the evidence shows that the patent is of real value, then plaintiff is entitled to such substantial damages as the proof demands. The amount is for you to determine, always remembering that it devolves upon the plaintiff to prove the actual damages it has sustained, if any. I instruct you that it is competent, in cases like the present, for a patentee, in order that the

jiry may measure his damages, to prove the contract prices at which licenses had been granted under the patent while it was in force, but that it is not competent for him to prove the prices paid for infringements; that is to say, payments made in settlement of infringements already committed. In order to be competent evidence of value, the prices agreed on must have been fixed with regard to future use, when, there being no liability between the parties, they are presumed, on both sides, to have acted voluntarily, and therefore to have made up their minds deliberately as to what was a fair price. Such arrangements, licenses thus granted, fees thus fixed, are competent evidence to consider in determining what the actual value of an invention is, and what the recovery ought to be for its use. But settlements for past transactions, when the parties are liable to suit if they do not pay, I instruct you are not admissible as evidence for the plaintiff upon the subject of value, and will not be considered by you. *Shoe Co.* v. *Manufacturing Co.*, 19 Fed. Rep. 517; *Seymour* v. *McCormick*, 16 How. 480. If, therefore, you find that a fixed license fee was established by the plaintiff in the manner above indicated for the use of its solution, and that defendant used it in violation of the rights secured to the plaintiff by claims 1 and 4 of the patent, or either of them, then you are instructed that the rates so fixed for the use of the solution is evidence of what the recovery ought to be for the infringement, and you will consider it in arriving at a verdict. You are further instructed that the fact that the licenses put in evidence on the part of the plaintiff conferred on the licensees the right to use other patents than that for the infringement of which this action is brought is unimportant, if you find that they fixed the fees charged for the use of the solution in question. If, however, you should find from the evidence that the plaintiff issued its licenses for the same privileges to different persons at different rates,—in other words, if they were uncertain and irregular in amount,—then I charge you that it cannot be considered that any fixed fees were established. If you should find the question of infringement against the defendant, and should further find that license fees were established by the plaintiff in the manner already explained, and accept such rates as the measure of plaintiff's damages, you will allow interest thereon at the rate of 7 per cent. per annum from the dates at which such sums would, respectively, have become due under such established system of licenses, up to the time of the commencement of this action, which was January 8, 1886. There has been no testimony given tending to show any actual damages other than the license fees plaintiff claims to have established. Should you find for the plaintiff, the form of your verdict will be: We, the jury, find for the plaintiff, and assess its damages at $———. If for the defendant: We, the jury, find for defendant.

Verdict for full amount claimed.