Morss *v.* Union Form Co. (No. 316.)  Hall *v.* Knapp *et al.* (No, 336.)  Morss *v.* Knapp. (No. 538.)

(*Circuit Court, D. Connecticut.*  July 26, 1889.)

1. Patents for Inventions—Infringement—Damages—Profits.

Defendants sold the complainant's patented expanding dress-form, to which defendants attached an improved device for operating it.  Complainant's patented device gave to the infringing form its value as a marketable article.  *Held,* that if any distinct part of the profit derived by defendants from the infringing sales was due to their improvement in the operating device, the burden was on them to show it.

2. Same—Loss of Sales.

The master properly refused to allow complainant, in addition to the profits which he would have made upon the number of forms which he was deprived from selling by defendants' infringing sales, the profits made by defendants upon the number of forms sold by them in excess thereof.  The proper rule is to allow only proved damages.

3. Same—Accounting—Evidence.

Where it is manifest that during the period covered by the litigation all the testimony of importance was discovered and presented, it is proper for the master to refuse to open the accounting to receive further evidence that an expanding device not included in complainant's patent, but accomplishing the same results, was free to be used, and to receive in evidence a patent issued to one of the defendants before the accounting commenced.

4. Same—Increased Damages.

While complainant is entitled to increased damages, under Rev. St. U. S. §§ 4919, 4921, giving the court discretionary power to increase the damages, for infringing sales made by defendants in willful violation of a decree enjoining them from so doing, he is not entitled to such damages merely on account of defendants' conduct in pushing the infringing articles upon complainant's customers, and endeavoring to deprive him of his former trade.

At Law and in Equity.  On exceptions to master's report.

The facts are sufficiently stated in the opinion.  Rev St. U. S. § 4919, provides that damages for infringement of a patent may be recovered by an action on the case, and that on a verdict for plaintiff "the court may enter judgment thereon for any sum above the amount found by the verdict as the actual damages sustained, according to the circumstances of the case, not exceeding three times the amount of such verdict," etc.  Section 4921 provides that in suits in equity the court may assess the damages caused by the infringement, and that "the court shall have the same power to increase such damages, in its discretion, as is given to increase the damages found by verdicts in actions in the nature of actions of trespass on the case."

*Payson E. Tucker* and *Charles F. Perkins,* for complainant.

*John K. Beach,* for defendants.

Shipman, J.  These are exceptions to the committee's and master's report in two actions at law and one suit in equity, which were based upon the infringement of letters patent No. 233,240, dated October 12, 1880, to John Hall, for an adjustable dress-form.  A description of the invention and the claim which was infringed are given in *Morss v. Knapp,* 37 Fed. Rep. 351.  By agreement of the parties the accounting upon the

bill in equity was referred to Edwin E. Marvin, Esq., as master, who was also appointed committee to ascertain the damages in the actions at law. The time which was covered by the different suits was as follows: By No. 316, from October 12, 1880, to April 27, 1886; by No. 336, from April 27, 1886, to November 16, 1886; and by the accounting in No. 538, from November 16, 1886, to February 25, 1889. The three cases were heard together upon the stipulation that all the proofs should be considered to be taken in each of said causes, so far as the same were competent and relevant. In No. 538 the master found the profits of the defendant to be $5,421.02, and the proved damages to the complainant to be $7,206.21. The damages in No. 306 and No. 336 he found to be respectively $512.43 and $373.23. A larger sum in damages in each of these cases he also found in the alternative, if the court should be of the opinion that the evidence was sufficient to justify it. This will be considered hereafter. Both parties except to the findings of the committee and master.

Two general classes of forms were made by the defendants, as well as by the complainants, a skirt-form and a complete form. In order to understand the bearing of the several exceptions it is necessary to give the findings of the master in regard to the damages and profits by the sale of each of these forms, and I think it is important to give them in his own language:

"I find both these forms contain the expanding device of the second claim of the plaintiff's patent in this suit. Of the skirt it supplies the chief elements of the structure, and gives to it its value as a marketable article. It does not appear by the evidence that the solid skirts of such form have or ever did have any considerable sale or great market value, but for skirts adjustable in a greater or less degree to the human form it does appear that there is a large and increasing demand, for the purposes of draping and fitting of garments. The adjustable device employed as to these particular skirts belonged to the complainant, and was embodied in them by the defendants for the purpose of giving them sale, and did in fact sell them. The defendants superadded to the complainant's invention in suit a firmer waist, a substantial foot on casters, also a very simple, convenient, and valuable device for operating the expanding mechanism of it, consisting of a slow-threaded screw on the central rod, rotated or operated by a handle or knob at the top of the form, whereby the mechanism of the plaintiff's patent could be conveniently expanded to fit any form, and at all stages of the adjustment be securely and firmly locked and held in position and in proper form. This device was an improvement for the operation of the plaintiff's device which, as organized in plaintiff's skirt, operated by hand, and with considerable inconvenience, and required to be locked and held at all points desired by the use of several set-screws. The plaintiffs' device was more valuable with this improvement added to it than without it; and the defendants' form embodying plaintiff's device so improved in competition with the plaintiff's skirt form, which did not contain the defendants' improvement, sold more freely than plaintiff's, at slightly higher prices than plaintiff's; that is, it brought from $2.50 to $3, while plaintiff's iron post form brought from $2 to $2.50, and wood post form from $1.50 to $2. The defendants' improvement was not such a device as could give any value to a skirt-form having no expanding devices within it upon which it could operate. The plaintiff's expanding device was absolutely necessary to it to give it any sale; nor does it appear

that there is any other expanding device for skirt-forms on which the defendants' device can operate, or with which it can be employed, which is open and free for them to use and employ. For such profits as the defendants secured by this appropriation of the plaintiff's patent, or for the damages thereby coming upon the plaintiff by loss of sales of his own invention, the defendants are to account. If the defendants' device added to these any essential part of them, the defendants should have proved the amount of such added profits in their own interest after having stated their total profits to the master in their statement on file. There was no such proof made, and the added expense of manufacture necessary would rather indicate a lessening of profits. The profits which the defendants admit they made on these skirts are sixty cents each, and $1,576.80 in the whole."

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"As to the 3,364 full-figure forms sold during the same time, i. e., from November 16, 1886, to April 20, 1888, the defendants admit their profits upon the sale of them to have been $1.08 each, and $3,633.12 in the whole. I find that the device of the plaintiff's patent in suit was embodied in all these figures in the same way as in defendants' skirt, to which was added the defendants' knob at the top upon a central screw-threaded rod, for expanding and holding at all points the plaintiff's expanding device, and such addition was entirely useless unless so organized with the plaintiff's patent in suit. That the plaintiff's expanding device in suit, both in bust and the skirt, was a valuable element of defendants' forms, and contributed largely to their sales; but that there were in these full forms other important and prominent features which likewise contributed largely to their sales, and added much to the value of the structure in use; and therefore I cannot find from the evidence that all the profits made by the defendants belong or are due to the plaintiff's patent in suit. Neither is there evidence in the case from which I can find the proportion of the amount of stated profits belonging or attributable to the complainant's patented device, and what to the devices patented by the defendants, and unpatented, which are embodied in this dress-form. There is no evidence from which I can separate the one from the other, and, under such circumstances, if the plaintiff should be adjudged profits, only nominal profits could be given. As to the damages resulting to the plaintiff by the loss of sales of his full and complete form in each instance where one of these forms were sold to his previous customers, I cannot find that he was so damaged. While he undoubtedly suffered a great loss of sales by such interference, the evidence will not establish the fact that he lost the whole number of such sales for such cause, nor is there any evidence which determines what number of sales was so lost. The defendants' full-figure form was in many respects a very superior form. The whole figure was firmer, stronger, and fully as graceful as that of the plaintiff, and also employed in its construction a *papier maché* bust, which kept its shape better, and was far more preferable in general appearance and for fitting purposes than one made of wires. The complainant's selling agents admit that there was a large inquiry in the trade for forms containing these *papier maché* busts, and that the matter of incorporating such a bust in the plaintiff's forms in order to meet the demands of the trade was suggested by customers, from all of which it is certain that although the plaintiff's device in suit was a very desirable element in the trade, and still more desirable when improved by expanding mechanism operating at the top as the defendant organized it in all of his forms, still that the *papier maché* bust was nearly, if not quite, as valuable an element; and it seems fair to presume from the evidence that this bust made as many of the defendants' sales as did the plaintiff's device, and it is absolutely certain that defendant did not make all, or nearly all, his sales to the complainant's previous customers because of the expanding devices of the hip portion of the skirt. Nor can I find the same fact that I have found

in regard to the defendant's skirt-form, that the plaintiff's expanding device was absolutely necessary to give it any sale, and that it would have had no great sale or commercial value without it. On the contrary, I find that it would have undoubtedly had a very considerable sale if it had no expanding devices whatever at the hip of the skirt."

The same difference or distinction was made in regard to the damages in the actions at law and in regard to the sales after April 20, 1888. No damages or profits were given upon the 7,636 complete forms which the defendants sold. Ten of the complainant's 13 exceptions relate to this portion of the report and it is contended that the defendants should be required to pay all the profits which they made upon the full figures, or should pay upon the forms at least a sum based upon the amount which they made upon the skirt-forms. This contention is upon the ground that the invention of the second claim constituted the chief part and value of the full forms. While it is manifest from an examination of the careful and conservative report of the master that he had no doubt of the fact of a great loss of sales to the complainant from these competing forms, and a consequent damage by the infringement, yet that he could not find a basis for the ascertainment of a specific amount of damages arising from the use of the patented invention. My examination of the proofs leads me to the conclusion that, while I do not place quite so much value as he did upon the preference which agents exhibited for the *papier mache* bust, and think that without the expanding devices at the hip of the skirt it would not have been so formidable a rival to the complainant's full form as it was, yet I perceive that there is necessarily a haziness about that part of the case, which makes it difficult to reach exact and definite results in figures as to the amount of damages or profits resulting from the use of the invention as described in the second claim.

Two other exceptions make the point that as damages the master should, in addition to the profits which the complainant would have made upon the number of skirt-forms which he was deprived from selling by the defendants' sales, have allowed the profits made by the defendants upon the number of skirt-forms sold by them in excess thereof. The master and committee followed the rules in the computation of damages which are laid down in *Seymour* v. *McCormick,* 16 How. 480; *Philp* v. *Nock,* 17 Wall. 460; *Buerk* v. *Imhaeuser,* 14 Blatchf. 19, and which are commented upon in *Root* v. *Railway Co.,* 105 U. S. 189, and allowed only proved damages, and I think that he followed the established rule. The remaining ninth exception, in regard to the sufficiency of the means of ascertaining the number of wooden post and iron post forms, respectively, which the complainant would have sold but for the infringement, is immaterial, in view of the alternative finding of the master, which will be hereafter considered.

The 21 exceptions of the defendants cover the entire case which is stated in the report. The important ones may be divided into three classes. The first contention is that the patented form is but an improvement in the art over pre-existing forms, and that, therefore, the entire

amount of profit which the defendants made cannot be the proper rule of profits. They insist that solid skirt-forms existed and had a prominent place, and that the Everett form, although to a certain extent an, adjustable form, was yet practically a solid form, and had a large sale. The first exception is to the finding of the master, that it does not appear that solid skirts of the general form of the defendants' have or ever did have any considerable sale or great market value. Solid entire forms or "dummies" for the exhibition of wearing apparel have long existed, but. the patented article was the first dress-form which was adjustable to all sizes, without change of shape. The Everett form was a primitive affair, which had a pretense of adjustability. It was enlarged by pulling away a movable half section from a stationary half section, thus broadening the figure from side to side, while keeping it unaltered from front to rear. The shape was radically changed. The solid entire form has still its place in the shops, and is also made to order, in imitation of the figure of the person who is to use it, but it is not justly a subject of comparison with the patented article, which had a new and distinct character of its own, viz., expansion or adjustment, by the described means, of a skeleton frame, radially, in all directions from a common center, and had its own place as an aid in the manufacture of ladies' wearing apparel. In consequence of its appearance in the market, the Everett form disappeared. The Everett sales of 11,500 in 1883 diminished, until during the year ending in August, 1887, 1,000 were sold, and in the next year, when its manufacturer introduced a new form designed to improve upon its defects, the sales were about 100.

The defendants, secondly, in view of the sales of the Everett form, object to the report, because it is found that the complainant's expanding device of the second claim gave to the defendants' skirt-form its value as a marketable article, and sold it, and was necessary to give it any sale. Of the truth of this finding there can be no doubt. The second claim contained the entire new skirt-form, which was the skeleton frame radially adjusted in all directions from a common center by the described means; and the defendants' wire structure contained the whole of the second claim and of the complainant's frame, and little else, except better and more expensive workmanship, and a better and more expensive equivalent device for operating the expanding mechanism. The defendants' device was the complainant's plus better workmanship and a better selection of equivalent devices to operate the braces.

The third class of exceptions is as to the rule by which profits are to be estimated, and to the finding of law that if the defendants' device added to the profits which they made any essential part of them, they should have proved the amount of such added profit. The complainant relies upon the rule in *Elizabeth* v. *Pavement Co.*, 97 U. S. 126, in the case of an entire profit derived from the construction of the patented device as an entirety, that if any distinct profit was realized from the addition of another improvement, the burden is upon the infringer to show it. The defendants rely upon the rule in *Garretson* v. *Clark*, 111 U. S. 120, 4 Sup. Ct. Rep. 291, that when the patent is for an improvement,.

and not for an entirely new contrivance, the burden is upon the patentee to apportion the profits between the patented feature and the unpatented features. As has been before said, the complainant's skirt-form was new and distinct from either the "dummy" form or the Everett form. Its entire character consisted in its method of radial expansion without change of shape. The defendants' skirt-form has been described. The principle of the *Pavement Co. Case* seems to be the one which is applicable. If not, it is properly found, as required in *Garretson* v. *Clark*, that the patented device of the second claim gave to the infringing skirt its value as a marketable article.

The defendants also except to the refusal of the master to open the accounting, after it was closed, to receive further evidence that an expanding device not included in the plaintiff's patent was open and free to be used, and accomplished the same results, and also refused to receive in evidence letters patent to one of the defendants, dated October 29, 1887. The litigation had been in existence both in this district and in the district of Massachusetts. The accounting commenced May 9, 1888, and the testimony seems to have been completed November 29, 1888. During this litigation, it is manifest, from the circumstances which surround the case, that all the testimony of importance had been found and presented. All the exceptions are overruled.

The master found, in each action, the number of skirt-forms which the complainant had been prevented from selling by the defendants' sales. The complainant's forms were made either with a wooden post or with an iron post. Upon the former he made a profit of 87 cents, and upon the latter of $1.14 per form. The defendants made iron post forms only. Their prices were somewhat larger than the complainant's prices for iron post forms, and their profits upon the largest part of their sales were either 60 cents or 60½ cents per form. Five-ninths of the complainant's sales of skirt-forms were iron post forms, and four-ninths were wooden post forms. The master finds in the equity case that it is a "fair inference from the facts that complainant's loss of sales of 8,263 plaintiff's skirt-forms which he has suffered by the sales of defendants' various infringing skirt-forms would have been supplied by the complainant in the same proportion, and that, if the court is of the opinion that the master is entitled to find such fact from such proof, then the master, in that alternative, finds that five-ninths of the sales of said 8,263 dress forms would have been iron post forms, and the complainant's damages by loss of sales of each of said forms would have been $1.14 in such case upon five-ninths (4,591) of said forms, instead of 87 cents, a difference of 27 cents each." The same facts are found with reference to the damages in the actions at law. I am of opinion that the proof authorizes such fact to be found except in regard to the 620 "baby drapers" which were sold. Upon such computation the damages in No. 316 will be $600.72, and in No. 336 will be $435.49. The damages in No. 538 will be $8,352.36, being an increase of $1,146.15; and the excess of damages above profits will be $2,931.34.

The complainant has filed a motion for an increase of damages under

the two sections of the Revised Statutes relating thereto, upon the general grounds that the infringement was willful, and counterfeited the appearance of the complainant's form, and was accompanied with conduct which indicated a willful and malicious determination to injure the complainant.

A decree in the Ufford suit in the district of Massachusetts, in which the Knapps were the real defendants, was entered February 23, 1888. They continued to manufacture in this district until March 30, 1888, when they were enjoined by decree of this court. They then commenced to sell the forms B, C, and baby drapers, which were not in the Massachusetts case, and continued such sale until January, 1889, although the Domestic Sewing-Machine Company, at the suit of the plaintiff, in which suit the Knapps were the real defendants, was enjoined, on August 25, 1888, in Massachusetts, against selling B and C. The accounting in the equity suit was until February 25, 1889. The defendants pertinaciously pushed their goods upon the customers of the complainants, and endeavored to deprive them of their former trade, but I do not consider that the statute in regard to increased damages intended to punish this pushing, forceful method of business, and I do not find that, with the exception of the interval between February 23, 1888, and March 30, 1888, and between August 25, 1888, and January, 1889, the infringement was a willful or wanton violation of the complainants' exclusive rights. During that time they were acting willfully, and the damages should be increased on that account $250.