WILLIAM H. SEYMOUR AND DAYTON S. MORGAN, PLAINTIFFS IN ERROR, v. CYRUS H. McCORMICK.

In 1834, McCormick obtained a patent for a reaping machine. This patent expired in 1848.

In 1845, he obtained a patent for an improvement upon his patented machine; and in 1847, another patent for new and useful improvements in the reaping machine. The principal one of these last was in giving to the raker of the grain a convenient seat upon the machine.

In a suit for a violation of the patent of 1847, it was erroneous in the Circuit Court to say that the defendant was responsible in damages to the same extent as if he had pirated the whole machine.

It was also erroneous to lay down as a rule for the measure of damages, the amount of profits which the patentee would have made, if he had constructed and sold each one. of the machines which the defendants constructed and sold. There was no evidence to show that the patentee could have constructed and sold any more than he actually did.

The acts of Congress and the rules for measuring damages, examined and explained.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the Northern District of New York.

The manner in which the suit was brought, and the charge of the Circuit Court, which was excepted to, are stated in the opinion of the court. The reporter passes over all other questions which were raised and decided, except those upon which the decision of this court turned.

It was argued by *Mr. Gillet*, for the plaintiffs in error, and by *Mr. Stevens* and *Mr. Johnson*, for the defendants in error. There was also a brief filed by *Mr. Selden*, for the plaintiffs in error.

The following points are taken from the brief of *Mr. Gillet*, for the plaintiffs in error.

*Sixth.* Where the claim on which the suit is founded is for an improvement on old machines, patented or unpatented, the plaintiff is not entitled to recover, as a measure of damages, the mechanical profits that he could make upon the whole machine, including the old part. His damages are limited to the profits on making and vending the improvement patented and infringed.

The plaintiff recited in his declaration and furnished oyer of his old patent of 1834, for a reaping machine, which expired in 1848, and his patent of 1845, which is described as an "improvement upon his patented machine." In his patent of 1847, he claims "new and useful improvements in the reaping machine formerly patented by me," in which he also claims other improvements besides the one in controversy, which is his last claim, and relates to the seat. For the purpose of this suit, the machine described in the patent of 1834, (which had in fact be-

come public property,) and the improvements in the patent of 1845, and a large portion of those included in that of 1847, the defendants had a perfectly lawful right to use. This covered the whole of the improved reaping machine, except what related to the seat, and its combination with the reel. It cost the defendants to make their machine, which had no seat, about $64.26. There was no proof to show the extent of the cost of the plaintiff's seat. One was made by Zinck, for one dollar. The plaintiff allowed Brown in effect, in 1845, 1846, $75 each, for making machines without the elevated seat — and he proved on this trial by Blakesley, that it cost him only $36, and by Dorman, $37, to make them with it. There can be no pretence that the addition of the seat, and what is covered by the last claim, added much, if any thing, to the cost of constructing the improved machine. The plaintiff proved by Blakesley, that the manufacturer's profit on the whole machine, including a $30 patent fee, was $74.

It is evident that the manufacturer's profit constituted the principal item of gain in constructing and selling the plaintiff's reaper. The court instructed the jury that this profit on the two old machines, and on that part of the new not in controversy, could be recovered as a part of the plaintiff's " actual damage " for violating the last claim of the patent of 1847. The old machine of 1834 was public property, and everybody had a right to construct and use it. The patents show that it contained the great and fundamental parts, and nearly the whole of the new machine. As the plaintiff had decided not to proceed on his patent of 1845, that was, in effect, public property. By waiving any right to proceed on the first claim of his patent of 1847, the plaintiff limited himself to the seat, combined with the reel. The defendants had a right to make every other part of the improved machine, and having the right, the profits up to that point were lawfully theirs. They had the right to construct the whole, save the seat. If a profit could be made upon such construction, it was as clearly theirs as if they had been made upon a machine totally unlike the plaintiff's. There is no law, statute, or otherwise, which prohibits their making and receiving such profits. The court instructed the jury that all these profits belonged to the plaintiff, but pointed to no law showing him entitled to them. The manufacturer's profits were distinct from his patent profits, which he estimated and charged the defendants and his partners generally at $30. The charge of the court gives him both. It makes the monopoly of a patent confined to an inexpensive improvement carry with it a monopoly of manufacturers' profits upon what is public property, precisely the same as if the whole had been included in the claim on which the trial was had.

The ruling of the judge allowed the plaintiff damages to as great an extent as if the trial had been on, and had established, the old patents of 1834 and 1845, and on the first claim of that of 1847, as well as on the last. If the defendants pay these damages, there is nothing to prevent the plaintiff suing on the patent of 1845, and on the first claim of that of 1847, because this trial and verdict were confined to the last claim of the latter patent. They were not recovered upon. But the plaintiff was adjudged to enjoy their advantages under the head of manufacturers' profits. But we deny that the patent laws confer a monopoly of profits on any thing not actually patented. It would be extending the statute so as to make it cover, in effect, things that the patentee did not invent, and which by law belong to the public at large. This principle would authorize the patentee of an improvement in steamboat machinery, or railroad cars, carding, spinning, weaving, and other like machines, to recover on a patent for some trifling improvement of either the entire profits of manufacturing the whole apparatus to which it might be attached.

The judge's rule allows the plaintiff precisely the same damages as if his last claim covered the whole reaping machine, and had been held to be valid. Under his ruling, if the material parts, other than the seat, had been covered by several other patents, the defendants would have been responsible on each, as well as to the plaintiff, for all profits, manufacturing as well as for the patent-right. In such a case the plaintiff's rights, as against the defendants, would be precisely as strong as when the latter used what is now public property. If the plaintiff should bring a new suit on his patent of 1845, the recovery on that of 1847 would be no bar, and he might obtain a second manufacturer's profit. The defendants sought to attack the validity of the patent of 1845, but the evidence was ruled out; still the plaintiff was allowed to recover for the manufacturer's profits of the part of the machine covered by this patent, just the same as if it had been a part of the last claim of the patent of 1847. If the defendants had been patentees of the whole machine except the seat, and they had infringed the patent for that, could the plaintiff recover manufacturer's profits on the whole machine? Clearly not. Still the rights of the defendants to make and use all but the seat, are just as strong and legal, when they use what is public property, or what is not covered by the last claim of the patent of 1847, as if they exercised them under a patent. The fact that they had or had not a patent for every thing but the seat, can neither increase nor diminish the plaintiff's rights to damages; they must rest solely upon his patent, and not upon those of others. The law allows him all

the profit he can make on his patented improvement, and nothing beyond. The judge's instruction was clearly erroneous, and vitiates the verdict.

*Seventh.* In estimating the plaintiff's damages for an in-fringement, his " actual damages " alone are to be considered, and the jury are not authorized to presume that if the defendants had not made and sold machines, " all persons who bought the defendants' machines would necessarily have been obliged to go to the patentee and purchase his machines."

The proof showed that the plaintiff manufactured his machines only at Chicago, in Illinois, and his sales were in the Western States, except a few in western New York. The defendants manufactured their machines at Brockport, near Rochester, in New York, and sold them there, in Canada, and some at the west, as proved. It was proved by Hanna — " The demand within my knowledge has been unparalleled, the manufacturer oftentimes not being able to supply the demand at certain points." The plaintiff offered no proof tending to show that he could and did supply all the demands for his machine, and could have furnished more if called for. In the absence of this evidence, and in direct conflict with the oath of the plaintiff's own witness, who was his superintendent, the court instructed the jury, that as a matter of law they were to presume that if the defendants had not constructed and sold any machines, the plaintiff would have manufactured and sold machines to the same persons to whom the defendants had sold. Hence, the jury were instructed to presume " in the judgment of the law " what was grossly improbable, and what the plaintiff himself had actually disproved. The law does not presume that all the persons who purchased of the defendants would have purchased of the plaintiff, because the law does not presume absurdities, and what is substantially a physical impossibility; nor does it presume, without evidence, that the plaintiff had introduced a witness who had sworn falsely. This part of the charge is clearly erroneous ; the court should have submitted this matter to the jury, to pass on as a question of fact.

(Mr. Stevens's eighth point was relative to the following exception which had been taken by the defendants below, namely :)

To that part of the charge which states, " the general rule is that the plaintiff, if he has made out his right to recover, is entitled to the actual damages he has sustained by reason of the infringement; and those damages may be determined by ascertaining the profits which, in judgment of law, he would have made, provided the defendants had not interfered with his rights. That view proceeds upon the principle that if the defendants had not interfered with the patentee, all persons who bought

the defendants' machines would necessarily have been obliged to go to the patentee and purchase his machine;" — the defendants' counsel excepted.

VIII. The tenth exception cannot be sustained. That exception is to that part of the charge which states that the rule of damages is, " that the plaintiff is entitled to recover the actual damages he has sustained by reason of the infringement." Those damages may be determined by ascertaining the profits which the plaintiff would have made if the defendants had not interfered with his rights.

It is submitted that this is the correct rule of damages in any case; but in this case its correctness cannot be doubted. The defendants, with a full knowledge of plaintiff's rights, intentionally violated them. They were intentional wrongdoers, and were, therefore, bound to pay the plaintiff all the damage he had sustained by their tortious acts, just as much as they would be bound to pay him the full value of a horse, or any other chattel, of which they had tortiously deprived him.

It was, indeed, contended on the trial, that defendants were only bound to pay such profits as they had made by this intentional piracy.

Without stopping to discuss the question whether there may not be considerations in a suit in equity, where the defendants ignorantly infringed a patent, which might limit the damages in accordance with the rule contended for by the defendants, it is respectfully submitted, that in a suit at law, where the defendants have wilfully, knowingly, and intentionally, piratec the invention of the patentee, and appropriated it to their own use, the rule of damages laid down by the court in this case i correct.

An infringer can afford to sell the machine patented at a less profit than the patentee can.

He has spent no time, exercised no intellect, in excogitating the discovery or invention.

He has spent no time nor money in procuring the patent and bringing it into public use. Any other rule of damages, therefore, than that laid down by the court, would do great injustice to the patentee.

According to the rule contended for by defendants, if they had sold the reapers made by them for simply what it cost to construct them, or had given them away, although it deprived the patentee of the profits which he might have made upon those reapers, yet he could recover no damages.

But the defendant's counsel did not request the court to charge that the rule of damages was different from that stated by the court. They simply excepted to the charge of the court

in that respect, without giving any reasons, or stating how otherwise they desired the court to charge, in that regard.

As to the rule of the damages, see Pierson v. Eagle Screw Company, 3 Story, 402, 410; Allen v. Blunt, 2 Woodbury & Minot, 123, 446–7.

Mr. Justice GRIER delivered the opinion of the court.

The plaintiff below, Cyrus H. McCormick, brought this action against the plaintiffs in error, Seymour & Morgan, for the infringement of his patent right. The declaration consisted of two counts.

The first alleged that the plaintiff was the true and original inventor of certain new and useful improvements in the machine for reaping all kinds of small grain, for which he obtained letters-patent on the 21st of June, 1834. And moreover, that the plaintiff was the inventor of certain improvements upon the aforesaid patented reaping machine for which he obtained letters-patent on the 31st day of January, 1845. And it charged that the defendant had made three hundred reaping machines which infringed the inventions and improvements, fourthly and fifthly claimed in the schedule or specification of the last-named letters-patent.

The second count alleged that the plaintiff was the first inventor of certain other improvements upon his said reaping machine before patented, for which he obtained letters-patent on the 23d day of October, 1847. And that the defendant manufactured and constructed three hundred machines embracing the principles of the last-named invention and improvements. The defendants pleaded not guilty, and the case being called for trial in October, 1851, they prayed a continuance of the cause on account of the absence of certain witnesses material to their defence against the charge laid in the first count, to wit, the infringement of the patent of 1845.

The court intimated an opinion that the affidavit was sufficient to put off the trial of the cause, whereupon the plaintiff's counsel stated to the court that rather than have the trial put off, they would not on said trial seek to recover against the defendant on account of any alleged infringement or violation by the defendants of the plaintiff's rights under his letters-patent bearing date January 31st, 1845, set forth in his declaration, but would proceed solely for a violation of the rights secured to him by his letters-patent bearing date October 23d, 1847, set forth in his declaration, under the last claim specified in that patent relating to the seat for the raker.

The trial then proceeded on the last count in the declaration for the infringement by defendants of this last patent, and testi-

41 *

mony offered to show that the plaintiff was not the original and first inventor of the reaping machine as described in his patents of 1834 and 1845, was rejected.

Numerous exceptions were taken by defendants in the course of the trial and to various instructions contained in the charge of the court. Most of these involve no general or important legal principle, and could not be understood without prolix statements with regard to the facts of the case and the structure of the peculiar machines. To notice them in detail would be both tedious and unprofitable. We deem it sufficient, therefore, to say that the defendants have failed to support their exceptions as to the rulings of the court concerning the testimony, and that the charge of the learned judge is an able and correct exposition of the law as applicable to the case, with the exception of the points which we propose now to examine, and which are contained in the following portion of the charge.

" The only remaining question is that of damages. The rule of law on this subject is a very simple one. The only difficulty that can exist is in the application of it to the evidence in the case. The general rule is that the plaintiff, if he has made out his right to recover, is entitled to the actual damages he has sustained by reason of the infringement, and those damages may be determined by ascertaining the profits which in judgment of law he would have made, provided the defendants had not interfered with his rights.

" That view proceeds upon the principle that if the defendants had not interfered with the patentee, all persons who bought the defendants' machines would necessarily have been obliged to go to the patentee and purchase his machine. That is the principle on which the profits that the patentee might have made out of the machines thus unlawfully constructed, present a ground that may aid the jury in arriving at the damages which the patentee has sustained.

" It has been suggested by the counsel for the defendants, that inasmuch as the claims of the plaintiff in question here are simply for improvements upon his old reaping machine and not for an entire machine and every part of it, the damages should be limited in proportion to the value of the improvements thus made, and that therefore a distinction exists, in regard to the rule of damages, between an infringement of an entire machine and an infringement of a mere improvement on a machine. I do not assent to this distinction. On the contrary, according to my view of the law regulating the measure of damages in cases of this kind, the rule which is to govern is the same whether the patent covers an entire machine or an improvement on a machine. Those who choose to use the old machine have a right to use it with-

out incurring any responsibility; but if they engraft on it the improvement secured to the patentee, and use the machine with that improvement, they have deprived the patentee of the fruits of his invention, the same as if he had invented the entire machine; because it is his improvement that gives value to the machine on account of the public demand for it. The old instrument is abandoned, and the public call for the improved instrument, and the whole instrument, with the improvement upon it, belongs to the patentee. Any person has a right to use the old machine; and if an inventor engrafts upon an old machine, which he has a right to use, an improvement that makes it superior to any thing of the kind for the accomplishment of its purposes, he is entitled to the benefit of the operation of the machine under all circumstances with the improvement engrafted upon it, to the same degree in which the original inventor is entitled to the old machine.

" There are some data, furnished by the counsel on both sides, which it is proper the jury should take into view in ascertaining the damages, provided they arrive at this question in the case. It is conceded that just three hundred machines have been made by the defendants, of the description to which I have called your attention, and testimony has been gone into on both sides for the purpose of showing the cost of the machines, and the prices at which they sold. In order to ascertain the profits accruing to the party who makes machines of this description, you must first ascertain the cost of the materials and labor; and the interest on the capital used in the manufacture of the machines. You must also take into account the expenses to which the manufacturer is subjected in putting them into market, such as that of agencies and transportation, also of insurance; and where the article is sold on credit, a deduction must also be made for bad debts. All these things must be taken into account, in order to bring into the cost every element that properly goes to constitute it in the hands of the manufacturer. When you have ascertained the aggregate sum of the cost, deduct it from the price paid by the purchaser, and you have the net profit on each machine. By this process you are enabled to approximate to something like the actual loss that the patentee sustains in a case where his right has been violated by persons interfering with him and putting into market his improvement."

The plaintiffs in error complain that these rules with regard to damages, as thus laid down by the court, are incorrect, and have produced a verdict for most ruinous damages, far beyond any thing justified by the facts of the case. 1. Because the jury were instructed that it is a legal presumption that if defend-

ant had not made and sold machines, all persons who bought the defendant's machines would necessarily have been compelled to go to the patentee and purchase his machines. That this principle was enunciated as a binding principle of law, although the plaintiff below had given no evidence to show that he could have made and sold a single machine more than he did, or was injured in any way by the competition of the defendants, or hindered from selling all he made or could make. And, secondly, because the jury were instructed that the measure of damages for infringing a patented improvement on a machine in public use is the same as if the defendant had pirated the whole machine and every improvement on it previously made, and as a consequence that the plaintiff below had a right to recover as great damages for the infringement of the patent in his second count as if he had proceeded on both counts of his declaration and shown the infringement of all the patents claimed, and that in consequence of these instructions they have been amerced in damages to the enormous sum of $17,306.66, and with costs to nearly the round sum of $20,000.

We are of opinion that the plaintiffs in error have just reason of complaint as regards these instructions and their consequent result.

The first patent act of 1790 made the infringer of a patent liable to "forfeit and pay to the patentee such damages as should be assessed by a jury, and, moreover, to forfeit to the person aggrieved the infringing machine."

The act of 1793 enacted "that the infringer should forfeit and pay to the patentee a sum equal to three times the price for which the patentee has usually sold or licensed to other persons the use of said invention." Here the price of a license is assumed to be a just measure of single damages, and the forfeiture by way of penalty is fixed at treble that sum. But as experience began to show that some inventions or discoveries had their chief value in a monopoly of use by the inventor, and not in a sale of licenses, the value of a license could not be made a universal rule, as a measure of damages. The act of 17th of April, 1800, changed the rule, and compelled the infringer "to forfeit and pay to the patentee a sum equal to three times the actual damage sustained by such patentee." This act continued in force till 1836, when the act now in force was passed.

Experience had shown the very great injustice of a horizontal rule equally affecting all cases, without regard to their peculiar merits. The defendant who acted in ignorance or good faith, claiming under a junior patent, was made liable to the same penalty with the wanton and malicious pirate. This rule was manifestly unjust. For there is no good reason why taking a

man's property in an invention should be trebly punished, while the measure of damages as to other property is single and actual damages. It is true, where the injury is wanton or malicious, a jury may inflict vindictive or exemplary damages, not to recompense the plaintiff, but to punish the defendant.

In order to obviate this injustice, the Patent Act of 1836 confines the jury to the assessment of "actual damages." The power to inflict vindictive or punitive damages is committed to the discretion and judgment of the court within the limit of trebling the actual damages found by the jury.

It must be apparent to the most superficial observer of the immense variety of patents issued every day, that there cannot, in the nature of things, be any one rule of damages which will equally apply to all cases. The mode of ascertaining actual damages must necessarily depend on the peculiar nature of the monopoly granted. A man who invents or discovers a new composition of matter, such as vulcanized India rubber, or a valuable medicine, may find his profit to consist in a close monopoly, forbidding any one to compete with him in the market, the patentee being himself able to supply the whole demand at his own price. If he should grant licenses to all who might desire to manufacture his composition, mutual competition might destroy the value of each license. This may be the case, also, where the patentee is the inventor of an entire new machine. If any person could use the invention or discovery by paying what a jury might suppose to be the fair value of a license, it is plain that competition would destroy the whole value of the monopoly. In such cases the profit of the infringer may be the only criterion of the actual damage of the patentee. But one who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement. And where the profit of the patentee consists neither in the exclusive use of the thing invented or discovered, nor in the monopoly of making it for others to use, it is evident that this rule could not apply. The case of Stimpson's patent for a turn-out in a railroad may be cited as an example. It was the interest of the patentee that all railroads should use his invention, provided they paid him the price of his license. He could not make his profit by selling it as a complete and separate machine. An infringer of such a patent could not be liable to damages to the amount of the profits of his railroad, nor could the actual damages to the patentee be measured by any known ratio of the profits on the road. The only actual damage which the patentee has suffered in such a case is the non-payment of the price which he has put on his license, with interest, and no

more.  There may be cases, as where the thing has been used but for a short time, in which the jury should find less than that sum; and there may be cases where, from some peculiar circumstance, the patentee may show actual damage to a larger amount.  Of this a jury must judge from the evidence, under instructions from the court that they can find only such damages as have actually been proved to have been sustained. Where an inventor finds it profitable to exercise his monopoly by selling licenses to make or use his improvement, he has himself fixed the average of his actual damage, when his invention has been used without his license.  If he claims any thing above that amount, he is bound to substantiate his claim by clear and distinct evidence.  When he has himself established the market value of his improvement, as separate and distinct from the other machinery with which it is connected, he can have no claim in justice or equity to make the profits of the whole machine the measure of his demand.  It is only where, from the peculiar circumstances of the case, no other rule can be found, that the defendant's profits become the criterion of the plaintiff's loss.  Actual damages must be actually proved, and cannot be assumed as a legal inference from any facts which amount not to actual proof of the fact.  What a patentee "would have made, if the infringer had not interfered with his rights," is a question of fact and not "a judgment of law." The question is not what speculatively he may have lost, but what actually he did lose.  It is not a "judgment of law" or necessary legal inference, that if all the manufacturers of steam-engines and locomotives, who have built and sold engines with a patented cut-off, or steam whistle, had not made such engines, that therefore all the purchasers of engines would have employed the patentee of the cut-off, or whistle; and that, consequently, such patentee is entitled to all the profits made in the manufacture of such steam engines by those who may have used his improvement without his license.  Such a rule of damages would be better entitled to the epithet of "speculative," "imaginary," or "fanciful," than that of "actual."

If the measure of damages be the same whether a patent be for an entire machine or for some improvement in some part of it, then it follows that each one who has patented an improvement in any portion of a steam engine or other complex machines may recover the whole profits arising from the skill, labor, material, and capital employed in making the whole machine, and the unfortunate mechanic may be compelled to pay treble his whole profits to each of a dozen or more several inventors of some small improvement in the engine he has built.  By this doctrine even the smallest part is made equal to

the whole, and " actual damages " to the plaintiff may be converted into an unlimited series of penalties on the defendant.

We think, therefore, that it is a very grave error to instruct a jury " that as to the measure of damages the same rule is to govern, whether the patent covers an entire machine or an improvement on a machine."

It appears, from the evidence in this case, that McCormick sold licenses to use his original patent of 1834 for twenty dollars each. He sold licenses to the defendants to make and vend machines containing all his improvements to any extent for thirty dollars for each machine, or at an average of ten dollars for each of his three patents. The defendants made and sold many hundred machines, and paid that price and no more. They refused to pay for the last three hundred machines under a belief that the plaintiff was not the original inventor of this last improvement, whereby a seat for the raker was provided on the machine, so that he could ride, and not be compelled to walk as before. Beyond the refusal to pay the usual license price, the plaintiff showed no actual damage. The jury gave a verdict for nearly double the amount demanded for the use of three several patents, in a suit where the defendant was charged with violating one only, and that for an improvement of small importance when compared with the whole machine. This enormous and ruinous verdict is but a corollary or necessary consequence from the instructions given in that portion of the charge of the court on which we have been commenting, and of the doctrines therein asserted, and to which this court cannot give their assent or concurrence.

The judgment of the Circuit Court is reversed, with a *venire de novo.*

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Northern District of New York, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court that the judgment of the said Circuit Court in this cause be, and the same is hereby reversed, with costs, and that this cause be, and the same is hereby remanded to the said Circuit Court with directions to award a *venire facias de novo.*