(Slip Opinion) OCTOBER TERM, 2015 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HALO ELECTRONICS, INC. *v.* PULSE ELECTRONICS, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 14–1513. Argued February 23, 2016—Decided June 13, 2016*

Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U. S. C. §284. The Federal Circuit has adopted a two-part test for determining whether damages may be increased pursuant to §284. First, a patent owner must "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology, LLC*, 497 F. 3d 1360, 1371. Second, the patentee must demonstrate, also by clear and convincing evidence, that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Ibid.* Under Federal Circuit precedent, an award of enhanced damages is subject to trifurcated appellate review. The first step of *Seagate*—objective recklessness—is reviewed *de novo*; the second—subjective knowledge—for substantial evidence; and the ultimate decision—whether to award enhanced damages—for abuse of discretion.

In each of these cases, petitioners were denied enhanced damages under the *Seagate* framework.

*Held*: The *Seagate* test is not consistent with §284. Pp. 7–15.

(a) The pertinent language of §284 contains no explicit limit or condition on when enhanced damages are appropriate, and this Court has emphasized that the "word 'may' clearly connotes discretion." *Martin* v. *Franklin Capital Corp.*, 546 U. S. 132, 136. At the same time, however, "[d]iscretion is not whim." *Id.*, at 139. Although there

_____

*Together with No. 14–1520, *Stryker Corp. et al.* v. *Zimmer, Inc.*, *et al.*, also on certiorari to the same court.

is "no precise rule or formula" for awarding damages under §284, a district court's "discretion should be exercised in light of the considerations" underlying the grant of that discretion. *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. ___, ___. Here, 180 years of enhanced damage awards under the Patent Act establish that they are not to be meted out in a typical infringement case, but are instead designed as a sanction for egregious infringement behavior. Pp. 7–9.

(b) In many respects, the *Seagate* test rightly reflects this historic guidance. It is, however, "unduly rigid, and . . . impermissibly encumbers the statutory grant of discretion to district courts." *Octane Fitness,* 572 U. S., at ___. Pp. 9–13.

(1) By requiring an objective recklessness finding in every case, the *Seagate* test excludes from discretionary punishment many of the most culpable offenders, including the "wanton and malicious pirate" who intentionally infringes a patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business. *Seymour* v. *McCormick*, 16 How. 480, 488. Under *Seagate,* a district court may not even consider enhanced damages for such a pirate, unless the court first determines that his infringement was "objectively" reckless. In the context of such deliberate wrongdoing, however, it is not clear why an independent showing of objective recklessness should be a prerequisite to enhanced damages. *Octane Fitness* arose in a different context but is instructive here. There, a two-part test for determining when a case was "exceptional"—and therefore eligible for an award of attorney's fees—was rejected because a claim of "subjective bad faith" alone could "warrant a fee award." 572 U. S., at ___. So too here: A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless. The *Seagate* test further errs by making dispositive the ability of the infringer to muster a reasonable defense at trial, even if he did not act on the basis of that defense or was even aware of it. Culpability, however, is generally measured against the actor's knowledge at the time of the challenged conduct. In sum, §284 allows district courts to punish the full range of culpable behavior. In so doing, they should take into account the particular circumstances of each case and reserve punishment for egregious cases typified by willful misconduct. Pp. 9–11.

(2) *Seagate*'s requirement that recklessness be proved by clear and convincing evidence is also inconsistent with §284. Once again, *Octane Fitness* is instructive. There, a clear and convincing standard for awards of attorney's fees was rejected because the statute at issue supplied no basis for imposing a heightened standard. Here, too,

§284 "imposes no specific evidentiary burden, much less such a high one," 572 U. S., at \_\_\_. And the fact that Congress erected a higher standard of proof elsewhere in the Patent Act, but not in §284, is telling. "[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard." *Id.,* at \_\_\_. Enhanced damages are no exception. P. 12.

(3) Having eschewed any rigid formula for awarding enhanced damages under §284, this Court likewise rejects the Federal Circuit's tripartite appellate review framework. In *Highmark Inc.* v. *Allcare Health Management System, Inc.*, 572 U. S. \_\_\_, the Court built on the *Octane Fitness* holding—which confirmed district court discretion to award attorney's fees—and rejected a similar multipart standard of review in favor of abuse of discretion review. The same conclusion follows naturally from the holding here: Because §284 "commits the determination" whether enhanced damages are appropriate to the district court's discretion, "that decision is to be reviewed on appeal for abuse of discretion." *Id.*, at \_\_\_. Nearly two centuries of enhanced damage awards have given substance to the notion that district courts' discretion is limited, and the Federal Circuit should review their exercise of that discretion in light of longstanding considerations that have guided both Congress and the courts. Pp. 12–13.

(c) Respondents' additional arguments are unpersuasive. They claim that Congress ratified the *Seagate* test when it reenacted §284 in 2011 without pertinent change, but the reenacted language unambiguously confirmed discretion in the district courts. Neither isolated snippets of legislative history nor a reference to willfulness in another recently enacted section reflects an endorsement of *Seagate*'s test. Respondents are also concerned that allowing district courts unlimited discretion to award enhanced damages could upset the balance between the protection of patent rights and the interest in technological innovation. That concern—while serious—cannot justify imposing an artificial construct such as the *Seagate* test on the limited discretion conferred under §284. Pp. 13–15.

No. 14–1513, 769 F. 3d 1371; No. 14–1520, 782 F. 3d 649, vacated and remanded.

ROBERTS, C. J., delivered the opinion for a unanimous Court. BREYER, J., filed a concurring opinion, in which KENNEDY and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

-------

### Nos. 14–1513 and 14–1520

-------

### HALO ELECTRONICS, INC., PETITIONER
14–1513                    *v.*
### PULSE ELECTRONICS, INC., ET AL.


### STRYKER CORPORATION, ET AL., PETITIONERS
14–1520                    *v.*
### ZIMMER, INC., ET AL.

#### ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 13, 2016]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U. S. C. §284. In *In re Seagate Technology, LLC*, 497 F. 3d 1360 (2007) (en banc), the United States Court of Appeals for the Federal Circuit adopted a two-part test for determining when a district court may increase damages pursuant to §284. Under *Seagate*, a patent owner must first "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.*, at 1371. Second, the patentee must demonstrate, again by clear and convincing evidence, that the risk of infringement "was either known or so obvious that it should have been

known to the accused infringer." *Ibid.* The question before us is whether this test is consistent with §284. We hold that it is not.

## I
### A

Enhanced damages are as old as U. S. patent law. The Patent Act of 1793 mandated treble damages in any successful infringement suit. See Patent Act of 1793, §5, 1 Stat. 322. In the Patent Act of 1836, however, Congress changed course and made enhanced damages discretionary, specifying that "it shall be in the power of the court to render judgment for any sum above the amount found by [the] verdict . . . not exceeding three times the amount thereof, according to the circumstances of the case." Patent Act of 1836, §14, 5 Stat. 123. In construing that new provision, this Court explained that the change was prompted by the "injustice" of subjecting a "defendant who acted in ignorance or good faith" to the same treatment as the "wanton and malicious pirate." *Seymour* v. *McCormick*, 16 How. 480, 488 (1854). There "is no good reason," we observed, "why taking a man's property in an invention should be trebly punished, while the measure of damages as to other property is single and actual damages." *Id.*, at 488–489. But "where the injury is wanton or malicious, a jury may inflict vindictive or exemplary damages, not to recompense the plaintiff, but to punish the defendant." *Id.*, at 489.

The Court followed the same approach in other decisions applying the 1836 Act, finding enhanced damages appropriate, for instance, "where the wrong [had] been done, under aggravated circumstances," *Dean* v. *Mason*, 20 How. 198, 203 (1858), but not where the defendant "appeared in truth to be ignorant of the existence of the patent right, and did not intend any infringement," *Hogg* v. *Emerson*, 11 How. 587, 607 (1850). See also *Livingston* v. *Wood-*

*worth*, 15 How. 546, 560 (1854) ("no ground" to inflict "penalty" where infringers were not "wanton").

In 1870, Congress amended the Patent Act, but preserved district court discretion to award up to treble damages "according to the circumstances of the case." Patent Act of 1870, §59, 16 Stat. 207. We continued to describe enhanced damages as "vindictive or punitive," which the court may "inflict" when "the circumstances of the case appear to require it." *Tilghman* v. *Proctor*, 125 U. S. 136, 143–144 (1888); *Topliff* v. *Topliff*, 145 U. S. 156, 174 (1892) (infringer knowingly sold copied technology of his former employer). At the same time, we reiterated that there was no basis for increased damages where "[t]here is no pretence of any wanton and wilful breach" and "nothing that suggests punitive damages, or that shows wherein the defendant was damnified other than by the loss of the profits which the plaintiff received." *Cincinnati Siemens-Lungren Gas Illuminating Co.* v. *Western Siemens-Lungren Co.*, 152 U. S. 200, 204 (1894).

Courts of Appeals likewise characterized enhanced damages as justified where the infringer acted deliberately or willfully, see, *e.g.*, *Baseball Display Co.* v. *Star Ball-player Co.*, 35 F. 2d 1, 3–4 (CA3 1929) (increased damages award appropriate "because of the deliberate and willful infringement"); *Power Specialty Co.* v. *Connecticut Light & Power Co.*, 80 F. 2d 874, 878 (CA2 1936) ("wanton, deliberate, and willful" infringement); *Brown Bag Filling Mach. Co.* v. *Drohen*, 175 F. 576, 577 (CA2 1910) ("a bald case of piracy"), but not where the infringement "was not wanton and deliberate," *Rockwood* v. *General Fire Extinguisher Co.*, 37 F. 2d 62, 66 (CA2 1930), or "conscious and deliberate," *Goodyear Tire & Rubber Co.* v. *Overman Cushion Tire Co.*, 95 F. 2d 978, 986 (CA6 1938).

Some early decisions did suggest that enhanced damages might serve to compensate patentees as well as to punish infringers. See, *e.g.*, *Clark* v. *Wooster*, 119 U. S.

322, 326 (1886) (noting that "[t]here may be damages beyond" licensing fees "but these are more properly the subjects" of enhanced damage awards). Such statements, however, were not for the ages, in part because the merger of law and equity removed certain procedural obstacles to full compensation absent enhancement. See generally 7 Chisum on Patents §20.03[4][b][iii], pp. 20–343 to 20–344 (2011). In the main, moreover, the references to compensation concerned costs attendant to litigation. See *Clark*, 119 U. S., at 326 (identifying enhanced damages as compensation for "the expense and trouble the plaintiff has been put to"); *Day* v. *Woodworth*, 13 How. 363, 372 (1852) (enhanced damages appropriate when defendant was "stubbornly litigious" or "caused unnecessary expense and trouble to the plaintiff"); *Teese* v. *Huntingdon*, 23 How. 2, 8–9 (1860) (discussing enhanced damages in the context of "counsel fees"). That concern dissipated with the enactment in 1952 of 35 U. S. C. §285, which authorized district courts to award reasonable attorney's fees to prevailing parties in "exceptional cases" under the Patent Act. See *Octane Fitness, LLC* v. *ICON Health & Fitness Inc.*, 572 U. S. ___, ___ (2014) (slip op., at 7).

It is against this backdrop that Congress, in the 1952 codification of the Patent Act, enacted §284. "The stated purpose" of the 1952 revision "was merely reorganization in language to clarify the statement of the statutes." *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 505, n. 20 (1964) (internal quotation marks omitted). This Court accordingly described §284—consistent with the history of enhanced damages under the Patent Act—as providing that "punitive or 'increased' damages" could be recovered "in a case of willful or bad-faith infringement." *Id.,* at 508; see also *Dowling* v. *United States*, 473 U. S. 207, 227, n. 19 (1985) ("willful infringement"); *Florida Prepaid Postsecondary Ed. Expense Bd.* v. *College Savings Bank*, 527 U. S. 627, 648, n. 11 (1999) (describing §284

damages as "punitive").

## B

In 2007, the Federal Circuit decided *Seagate* and fashioned the test for enhanced damages now before us. Under *Seagate*, a plaintiff seeking enhanced damages must show that the infringement of his patent was "willful." 497 F. 3d, at 1368. The Federal Circuit announced a two-part test to establish such willfulness: First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," without regard to "[t]he state of mind of the accused infringer." *Id.*, at 1371. This objectively defined risk is to be "determined by the record developed in the infringement proceedings." *Ibid.* "Objective recklessness will not be found" at this first step if the accused infringer, during the infringement proceedings, "raise[s] a 'substantial question' as to the validity or noninfringement of the patent." *Bard Peripheral Vascular, Inc.* v. *W. L. Gore & Assoc., Inc.*, 776 F. 3d 837, 844 (CA Fed. 2015). That categorical bar applies even if the defendant was unaware of the arguable defense when he acted. See *Seagate*, 497 F. 3d, at 1371; *Spine Solutions, Inc.* v. *Medtronic Sofamor Danek USA, Inc.*, 620 F. 3d 1305, 1319 (CA Fed. 2010).

Second, after establishing objective recklessness, a patentee must show—again by clear and convincing evidence—that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F. 3d, at 1371. Only when both steps have been satisfied can the district court proceed to consider whether to exercise its discretion to award enhanced damages. *Ibid.*

Under Federal Circuit precedent, an award of enhanced damages is subject to trifurcated appellate review. The first step of *Seagate*—objective recklessness—is reviewed

*de novo*; the second—subjective knowledge—for substantial evidence; and the ultimate decision—whether to award enhanced damages—for abuse of discretion. See *Bard Peripheral Vascular, Inc.* v. *W. L. Gore & Assoc., Inc.,* 682 F. 3d 1003, 1005, 1008 (CA Fed. 2012); *Spectralytics, Inc.* v. *Cordis Corp.*, 649 F. 3d 1336, 1347 (CA Fed. 2011).

## C

### 1

Petitioner Halo Electronics, Inc., and respondents Pulse Electronics, Inc., and Pulse Electronics Corporation (collectively, Pulse) supply electronic components. 769 F. 3d 1371, 1374–1375 (CA Fed. 2014). Halo alleges that Pulse infringed its patents for electronic packages containing transformers designed to be mounted to the surface of circuit boards. *Id.*, at 1374. In 2002, Halo sent Pulse two letters offering to license Halo's patents. *Id.,* at 1376. After one of its engineers concluded that Halo's patents were invalid, Pulse continued to sell the allegedly infringing products. *Ibid.*

In 2007, Halo sued Pulse. *Ibid.* The jury found that Pulse had infringed Halo's patents, and that there was a high probability it had done so willfully. *Ibid.* The District Court, however, declined to award enhanced damages under §284, after determining that Pulse had at trial presented a defense that "was not objectively baseless, or a 'sham.'" App. to Pet. for Cert. in No. 14–1513, p. 64a (quoting *Bard*, 682 F. 3d, at 1007). Thus, the court concluded, Halo had failed to show objective recklessness under the first step of *Seagate*. App. to Pet. for Cert. in No. 14–1513, at 65a. The Federal Circuit affirmed. 769 F. 3d 1371 (2014).

### 2

Petitioners Stryker Corporation, Stryker Puerto Rico,

Ltd., and Stryker Sales Corporation (collectively, Stryker) and respondents Zimmer, Inc., and Zimmer Surgical, Inc. (collectively, Zimmer), compete in the market for orthopedic pulsed lavage devices. App. to Pet. for Cert. in No. 14–1520, p. 49a. A pulsed lavage device is a combination spray gun and suction tube, used to clean tissue during surgery. *Ibid.* In 2010, Stryker sued Zimmer for patent infringement. 782 F. 3d 649, 653 (CA Fed. 2015). The jury found that Zimmer had willfully infringed Stryker's patents and awarded Stryker $70 million in lost profits. *Ibid.* The District Court added $6.1 million in supplemental damages and then trebled the total sum under §284, resulting in an award of over $228 million. App. in No. 14–1520, pp. 483–484.

Specifically, the District Court noted, the jury had heard testimony that Zimmer had "all-but instructed its design team to copy Stryker's products," App. to Pet. for Cert. in No. 14–1520, at 77a, and had chosen a "high-risk/high-reward strategy of competing immediately and aggressively in the pulsed lavage market," while "opt[ing] to worry about the potential legal consequences later," *id.*, at 52a. "[T]reble damages [were] appropriate," the District Court concluded, "[g]iven the one-sidedness of the case and the flagrancy and scope of Zimmer's infringement." *Id.*, at 119a.

The Federal Circuit affirmed the judgment of infringement but vacated the award of treble damages. 782 F. 3d, at 662. Applying *de novo* review, the court concluded that enhanced damages were unavailable because Zimmer had asserted "reasonable defenses" at trial. *Id.,* at 661–662.

We granted certiorari in both cases, 577 U. S. \_\_\_ (2015), and now vacate and remand.

## II

### A

The pertinent text of §284 provides simply that "the

court may increase the damages up to three times the amount found or assessed." 35 U. S. C. §284. That language contains no explicit limit or condition, and we have emphasized that the "word 'may' clearly connotes discretion." *Martin* v. *Franklin Capital Corp.*, 546 U. S. 132, 136 (2005) (quoting *Fogerty* v. *Fantasy, Inc.*, 510 U. S. 517, 533 (1994)).

At the same time, "[d]iscretion is not whim." *Martin*, 546 U. S., at 139. "[I]n a system of laws discretion is rarely without limits," even when the statute "does not specify any limits upon the district courts' discretion." *Flight Attendants* v. *Zipes*, 491 U. S. 754, 758 (1989). "[A] motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Martin,* 546 U. S., at 139 (quoting *United States* v. *Burr*, 25 F. Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C. J.); alteration omitted). Thus, although there is "no precise rule or formula" for awarding damages under §284, a district court's "discretion should be exercised in light of the considerations" underlying the grant of that discretion. *Octane Fitness,* 572 U. S., at ___ (slip op., at 8) (quoting *Fogerty*, 510 U. S., at 534).

Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate. See *supra,* at 2–5. District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount. But through nearly two centuries of discretionary awards and review by appellate tribunals, "the channel of discretion ha[s] narrowed," Friendly, In-

discretion About Discretion, 31 Emory L. J. 747, 772 (1982), so that such damages are generally reserved for egregious cases of culpable behavior.

## B

The *Seagate* test reflects, in many respects, a sound recognition that enhanced damages are generally appropriate under §284 only in egregious cases. That test, however, "is unduly rigid, and it impermissibly encumbers the statutory grant of discretion to district courts." *Octane Fitness,* 572 U. S., at ___ (slip op., at 7) (construing §285 of the Patent Act). In particular, it can have the effect of insulating some of the worst patent infringers from any liability for enhanced damages.

### 1

The principal problem with *Seagate*'s two-part test is that it requires a finding of objective recklessness in every case before district courts may award enhanced damages. Such a threshold requirement excludes from discretionary punishment many of the most culpable offenders, such as the "wanton and malicious pirate" who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business. *Seymour*, 16 How., at 488. Under *Seagate*, a district court may not even consider enhanced damages for such a pirate, unless the court first determines that his infringement was "objectively" reckless. In the context of such deliberate wrongdoing, however, it is not clear why an independent showing of objective recklessness—by clear and convincing evidence, no less—should be a prerequisite to enhanced damages.

Our recent decision in *Octane Fitness* arose in a different context but points in the same direction. In that case we considered §285 of the Patent Act, which allows district courts to award attorney's fees to prevailing parties in

"exceptional" cases. 35 U. S. C. §285. The Federal Circuit had adopted a two-part test for determining when a case qualified as exceptional, requiring that the claim asserted be both objectively baseless and brought in subjective bad faith. We rejected that test on the ground that a case presenting "subjective bad faith" alone could "sufficiently set itself apart from mine-run cases to warrant a fee award." 572 U. S., at ___ (slip op., at 9). So too here. The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless.

The *Seagate* test aggravates the problem by making dispositive the ability of the infringer to muster a reasonable (even though unsuccessful) defense at the infringement trial. The existence of such a defense insulates the infringer from enhanced damages, even if he did not act on the basis of the defense or was even aware of it. Under that standard, someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—can nevertheless escape any comeuppance under §284 solely on the strength of his attorney's ingenuity.

But culpability is generally measured against the knowledge of the actor at the time of the challenged conduct. See generally Restatement (Second) of Torts §8A (1965) ("intent" denotes state of mind in which "the actor desires to cause consequences of his act" or "believes" them to be "substantially certain to result from it"); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §34, p. 212 (5th ed. 1984) (describing willful, wanton, and reckless as "look[ing] to the actor's real or supposed state of mind"); see also *Kolstad* v. *American Dental Assn.*, 527 U. S. 526, 538 (1999) ("Most often . . . eligibility for punitive awards is characterized in terms of a defendant's motive or intent"). In *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47 (2007), we stated that a

person is reckless if he acts "*knowing* or *having reason to know* of facts which would lead a reasonable man to realize" his actions are unreasonably risky. *Id.*, at 69 (emphasis added and internal quotation marks omitted). The Court found that the defendant had not recklessly violated the Fair Credit Reporting Act because the defendant's interpretation had "a foundation in the statutory text" and the defendant lacked "the benefit of guidance from the courts of appeals or the Federal Trade Commission" that "might have warned it away from the view it took." *Id.,* at 69–70. Nothing in *Safeco* suggests that we should look to facts that the defendant neither knew nor had reason to know at the time he acted.*

Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test. Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct.

——————

*Respondents invoke a footnote in *Safeco* where we explained that in considering whether there had been a knowing or reckless violation of the Fair Credit Reporting Act, a showing of bad faith was not relevant absent a showing of objective recklessness. See 551 U. S., at 70, n. 20. But our precedents make clear that "bad-faith infringement" *is* an independent basis for enhancing patent damages. *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 508 (1964); see *supra,* at 2–5, 9–10; see also *Safeco*, 551 U. S., at 57 (noting that "'willfully' is a word of many meanings whose construction is often dependent on the context in which it appears" (some internal quotation marks omitted)).

### 2

The *Seagate* test is also inconsistent with §284 because it requires clear and convincing evidence to prove reck-lessness. On this point *Octane Fitness* is again instruc-tive. There too the Federal Circuit had adopted a clear and convincing standard of proof, for awards of attorney's fees under §285 of the Patent Act. Because that provision supplied no basis for imposing such a heightened standard of proof, we rejected it. See *Octane Fitness,* 572 U. S., at ___ (slip op., at 11). We do so here as well. Like §285, §284 "imposes no specific evidentiary burden, much less such a high one." *Ibid.* And the fact that Congress ex-pressly erected a higher standard of proof elsewhere in the Patent Act, see 35 U. S. C. §273(b), but not in §284, is telling. Furthermore, nothing in historical practice sup-ports a heightened standard. As we explained in *Octane Fitness*, "patent-infringement litigation has always been governed by a preponderance of the evidence standard." 572 U. S., at ___ (slip op., at 11). Enhanced damages are no exception.

### 3

Finally, because we eschew any rigid formula for award-ing enhanced damages under §284, we likewise reject the Federal Circuit's tripartite framework for appellate re-view. In *Highmark Inc.* v. *Allcare Health Management System, Inc.*, 572 U. S. ___ (2014), we built on our *Octane Fitness* holding to reject a similar multipart standard of review. Because *Octane Fitness* confirmed district court discretion to award attorney fees, we concluded that such decisions should be reviewed for abuse of discretion. *Highmark,* 572 U. S., at ___ (slip op., at 1).

The same conclusion follows naturally from our holding here. Section 284 gives district courts discretion in meting out enhanced damages. It "commits the determination" whether enhanced damages are appropriate "to the discre-

tion of the district court" and "that decision is to be reviewed on appeal for abuse of discretion." *Id.*, at ___ (slip op., at 4).

That standard allows for review of district court decisions informed by "the considerations we have identified." *Octane Fitness,* 572 U. S., at ___ (slip op., at 8) (internal quotation marks omitted). The appellate review framework adopted by the Federal Circuit reflects a concern that district courts may award enhanced damages too readily, and distort the balance between the protection of patent rights and the interest in technological innovation. Nearly two centuries of exercising discretion in awarding enhanced damages in patent cases, however, has given substance to the notion that there are limits to that discretion. The Federal Circuit should review such exercises of discretion in light of the longstanding considerations we have identified as having guided both Congress and the courts.

## III

For their part, respondents argue that Congress ratified the *Seagate* test when it passed the America Invents Act of 2011 and reenacted §284 without pertinent change. See Brief for Respondents in No. 14–1513 27 (citing *Lorillard* v. *Pons*, 434 U. S. 575, 580 (1978)). But the language Congress reenacted unambiguously confirmed discretion in the district courts. Congress's retention of §284 could just as readily reflect an intent that enhanced damages be awarded as they had been for nearly two centuries, through the exercise of such discretion, informed by settled practices. Respondents point to isolated snippets of legislative history referring to *Seagate* as evidence of congressional endorsement of its framework, but other morsels—such as Congress's failure to adopt a proposed codification similar to *Seagate*—point in the opposite direction. See, *e.g.*, H. R. 1260, 111th Cong., 1st Sess.

§5(e) (2009).

Respondents also seize on an addition to the Act addressing opinions of counsel. Section 298 provides that "[t]he failure of an infringer to obtain the advice of counsel" or "the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed." 35 U. S. C. §298. Respondents contend that the reference to willfulness reflects an endorsement of *Seagate*'s willfulness test. But willfulness has always been a part of patent law, before and after *Seagate*. Section 298 does not show that Congress ratified *Seagate*'s particular conception of willfulness. Rather, it simply addressed the fallout from the Federal Circuit's opinion in *Underwater Devices Inc.* v. *Morrison-Knudsen Co.*, 717 F. 2d 1380 (1983), which had imposed an "affirmative duty" to obtain advice of counsel prior to initiating any possible infringing activity, *id.*, at 1389–1390. See, *e.g.,* H. R. Rep. No. 112–98, pt. 1, p. 53 (2011).

At the end of the day, respondents' main argument for retaining the *Seagate* test comes down to a matter of policy. Respondents and their *amici* are concerned that allowing district courts unlimited discretion to award up to treble damages in infringement cases will impede innovation as companies steer well clear of any possible interference with patent rights. They also worry that the ready availability of such damages will embolden "trolls." Trolls, in the patois of the patent community, are entities that hold patents for the primary purpose of enforcing them against alleged infringers, often exacting outsized licensing fees on threat of litigation.

Respondents are correct that patent law reflects "a careful balance between the need to promote innovation" through patent protection, and the importance of facilitating the "imitation and refinement through imitation" that are "necessary to invention itself and the very lifeblood of

a competitive economy." *Bonito Boats, Inc.* v. *Thunder Craft Boats, Inc.*, 489 U. S. 141, 146 (1989). That balance can indeed be disrupted if enhanced damages are awarded in garden-variety cases. As we have explained, however, they should not be. The seriousness of respondents' policy concerns cannot justify imposing an artificial construct such as the *Seagate* test on the discretion conferred under §284.

\*　\*　\*

Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement. In applying this discretion, district courts are "to be guided by [the] sound legal principles" developed over nearly two centuries of application and interpretation of the Patent Act. *Martin*, 546 U. S., at 139 (internal quotation marks omitted). Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement. The *Seagate* test, in contrast, unduly confines the ability of district courts to exercise the discretion conferred on them. Because both cases before us were decided under the *Seagate* framework, we vacate the judgments of the Federal Circuit and remand the cases for proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

Nos. 14–1513 and 14–1520

---

HALO ELECTRONICS, INC., PETITIONER
14–1513               *v.*
PULSE ELECTRONICS, INC., ET AL.


STRYKER CORPORATION, ET AL., PETITIONERS
14–1520               *v.*
ZIMMER, INC., ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[June 13, 2016]

JUSTICE BREYER, with whom JUSTICE KENNEDY and JUSTICE ALITO join, concurring.

I agree with the Court that *In re Seagate Technology, LLC,* 497 F. 3d 1360 (CA Fed. 2007) (en banc), takes too mechanical an approach to the award of enhanced damages. But, as the Court notes, the relevant statutory provision, 35 U. S. C. §284, nonetheless imposes limits that help produce uniformity in its application and maintain its consistency with the basic objectives of patent law. See U. S. Const., Art. I, §8, cl. 8 ("To promote the Progress of Science and useful Arts"). I write separately to express my own understanding of several of those limits.

First, the Court's references to "willful misconduct" do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more. Ante,* at 11. "'[W]illfu[l]' is a 'word of many meanings whose construction is often dependent on the context in which it appears.'" *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47,

57 (2007). Here, the Court's opinion, read as a whole and in context, explains that "enhanced damages are generally appropriate . . . *only in egregious cases.*" *Ante,* at 8–9 (emphasis added); *ante,* at 11 (Enhanced damages "should generally be reserved for *egregious cases* typified by willful misconduct" (emphasis added)). They amount to a "'punitive'" sanction for engaging in conduct that is either "deliberate" or "wanton." *Ante,* at 8; compare *Aro Mfg. Co.* v. *Convertible Top Replacement Co.,* 377 U. S. 476, 508 (1964) ("bad-faith infringement"), and *Seymour* v. *McCormick,* 16 How. 480, 488 (1854) ("malicious pirate"), with *ante,* at 10–11, and n. 1 ("objective recklessness"). The Court refers, by way of example, to a "'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Ante*, at 9. And while the Court explains that "intentional or knowing" infringement "may" warrant a punitive sanction, the word it uses is *may*, not *must. Ante*, at 10. It is "circumstanc[e]" that transforms simple knowledge into such egregious behavior, and that makes all the difference. *Ante*, at 11.

Second, the Court writes against a statutory background specifying that the "failure of an infringer to obtain the advice of counsel . . . may not be used to prove that the accused infringer wilfully infringed." §298. The Court does not weaken this rule through its interpretation of §284. Nor should it. It may well be expensive to obtain an opinion of counsel. See Brief for Public Knowledge et al. as *Amici Curiae* 9 ("[O]pinion[s] [of counsel] could easily cost up to $100,000 per patent"); Brief for Internet Companies as *Amici Curiae* 13 (such opinions cost "tens of thousands of dollars"). Such costs can prevent an innovator from getting a small business up and running. At the same time, an owner of a small firm, or a scientist, engineer, or technician working there, might, without being

"wanton" or "reckless," reasonably determine that its product does not infringe a particular patent, or that that patent is probably invalid. Cf. *Association for Molecular Pathology* v. *Myriad Genetics, Inc.*, 569 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 13) (The "patent['s] [own] descriptions highlight the problem[s] with its claims"). I do not say that a lawyer's informed opinion would be unhelpful. To the contrary, consulting counsel may help draw the line between infringing and noninfringing uses. But on the other side of the equation lie the costs and the consequent risk of discouraging lawful innovation. Congress has thus left it to the potential infringer to decide whether to consult counsel—without the threat of treble damages influencing that decision. That is, Congress has determined that where both "advice of counsel" and "increased damages" are at issue, insisting upon the legal game is not worth the candle. Compare §298 with §284.

Third, as the Court explains, enhanced damages may not "serve to compensate patentees" for infringement-related costs or litigation expenses. *Ante,* at 3–4. That is because §284 provides for the former *prior* to any enhancement. §284 (enhancement follows award of "damages adequate to compensate for the infringement"); see *ante,* at 4. And a different statutory provision, §285, provides for the latter. *Ibid.*; *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. \_\_\_, \_\_\_–\_\_\_ (2014) (slip op., at 7–8) (fee awards may be appropriate in a case that is "'exceptional'" in respect to "the unreasonable manner in which [it] was litigated").

I describe these limitations on enhanced damages awards for a reason. Patent infringement, of course, is a highly undesirable and unlawful activity. But stopping infringement is a means to patent law's ends. Through a complex system of incentive-based laws, patent law helps to encourage the development of, disseminate knowledge about, and permit others to benefit from useful inventions.

Enhanced damages have a role to play in achieving those objectives, but, as described above, that role is limited.

Consider that the U. S. Patent and Trademark Office estimates that more than 2,500,000 patents are currently in force. See Dept. of Commerce, Patent and Trademark Office, A. Marco, M. Carley, S. Jackson, & A. Myers, The USPTO Historical Patent Files: Two Centuries of Invention, No. 2015–1, p. 32, fig. 6 (June 2015). Moreover, Members of the Court have noted that some "firms use patents . . . primarily [to] obtai[n] licensing fees." *eBay Inc.* v. *MercExchange, L. L. C.*, 547 U. S. 388, 396 (2006) (KENNEDY, J., concurring). *Amici* explain that some of those firms generate revenue by sending letters to "'tens of thousands of people asking for a license or settlement'" on a patent "'that may in fact not be warranted.'" Brief for Internet Companies as *Amici Curiae* 12; cf. Letter to Dr. Thomas Cooper (Jan. 16, 1814), in 6 Writings of Thomas Jefferson 295 (H. Washington ed. 1854) (lamenting "abuse of the frivolous patents"). How is a growing business to react to the arrival of such a letter, particularly if that letter carries with it a serious risk of treble damages? Does the letter put the company "on notice" of the patent? Will a jury find that the company behaved "recklessly," simply for failing to spend considerable time, effort, and money obtaining expert views about whether some or all of the patents described in the letter apply to its activities (and whether those patents are even valid)? These investigative activities can be costly. Hence, the risk of treble damages can encourage the company to settle, or even abandon any challenged activity.

To say this is to point to a risk: The more that businesses, laboratories, hospitals, and individuals adopt this approach, the more often a patent will reach beyond its lawful scope to discourage lawful activity, and the more often patent-related demands will frustrate, rather than "promote," the "Progress of Science and useful Arts." U. S.

Const., Art. I, §8, cl. 8; see, *e.g.*, *Eon-Net LP* v. *Flagstar Bancorp*, 653 F. 3d 1314, 1327 (CA Fed. 2011) (patent holder "acted in bad faith by exploiting the high cost to defend [patent] litigation to extract a nuisance value settlement"); *In re MPHJ Technnology Invs., LLC*, 159 F. T. C. 1004, 1007–1012 (2015) (patent owner sent more than 16,000 letters demanding settlement for using "common office equipment" under a patent it never intended to litigate); Brief for Internet Companies as *Amici Curiae* 15 (threat of enhanced damages hinders "collaborative efforts" to set "industry-wide" standards for matters such as internet protocols); Brief for Public Knowledge et al. as *Amici Curiae* 6 (predatory patent practices undermined "a new and highly praised virtual-reality glasses shopping system"). Thus, in the context of enhanced damages, there are patent-related risks on both sides of the equation. That fact argues, not for abandonment of enhanced damages, but for their careful application, to ensure that they only target cases of egregious misconduct.

One final point: The Court holds that awards of enhanced damages should be reviewed for an abuse of discretion. *Ante*, at 12–13. I agree. But I also believe that, in applying that standard, the Federal Circuit may take advantage of its own experience and expertise in patent law. Whether, for example, an infringer truly had "no doubts about [the] validity" of a patent may require an assessment of the reasonableness of a defense that may be apparent from the face of that patent. See *ante*, at 9. And any error on such a question would be an abuse of discretion. *Highmark Inc.* v. *Allcare Health Management System, Inc.*, 572 U. S. \_\_\_, \_\_\_, n. 2 (2014) (slip op., at 4, n. 2) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law" (internal quotation marks omitted)).

Understanding the Court's opinion in the ways described above, I join its opinion.