**ARCTIC CAT INC., Plaintiff,**

v.

**BOMBARDIER RECREATIONAL PRODUCTS, INC., and BRP U.S. Inc., Defendants.**

**Case No. 14-cv-62369-BLOOM/Valle**

United States District Court,
S.D. Florida.

Signed July 27, 2016

1344

Aaron A. Myers, Diane L. Peterson, Niall MacLeod, Kutak Rock, LLP, Minneapolis, MN, Howard Mitchell Bushman, Sarah Clasby Engel, Lance August Harke, Harke Clasby & Bushman LLP, Miami Shores, FL, Nicholas S. Boebel, Steve W. Berman, Hagens Berman Sobol Shapiro, LLP, Seattle, WA, for Plaintiff.

Rachael L. Rodman, John D. Luken, Joshua A. Lorentz, Lauren E. Ingebritson, Dinsmore & Shohl, LLP, Cincinnati, OH, Scott M. Sarason, Michael Roland Holt, Rumberger Kirk & Caldwell, Miami, FL, Jason M. Wejnert, Dinsmore & Shohl, LLP, Chicago, IL, for Defendants.

## ORDER

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon the Motion of Defendants Bombardier Recreation Products, Inc. and BRP U.S. Inc. (hereinafter, referred to together as "BRP" or "Defendant") for an Order (A) Vacating the Portion of the June 14, 2016, Final Judgment Enhancing Damages, ECF No. [157] ("Judgment"), and (B) Setting Briefing Schedule for Consideration of Motion by Plaintiff for Enhanced Damages. ECF No. [158] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing submissions and exhibits,[1] and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

### I. Background

Following a jury trial, a verdict issued in the above-styled case finding BRP liable to Plaintiff Arctic Cat Inc. ("Plaintiff" or "Arctic Cat") for willful infringement through the sale of certain models of personal watercraft (or "PWCs") under the name, Sea-Doo, which incorporated an off-throttle assisted steering technology. *See* ECF No. [153] (Jury "Verdict," dated June 1, 2016). Therein, the jury found by a preponderance of the evidence that BRP infringed ten claims in Arctic Cat's Patents, United States Patent Numbers 6,793,545 ("the '545 Patent") and 6,568,969 ("the '969 Patent"), including claims 13, 15, 17, 19, 25, and 30 of the '545 Patent as well as claims 15, 16, 17, and 19 of the '969 Patent. *See id.* at 1-2. The jury further held that BRP failed to prove its invalidity defenses of anticipation, obviousness, and enablement. *Id.* at 2-3. As to damages, the jury identified October 16, 2008, as the

---

1. The Court has considered, *inter alia*, argument as to enhanced damages contained within briefing on other pending post-trial motions, as requested by the parties. *See, e.g.,* ECF No. [172] ("Reply") at 8.

proper starting date, and $102.54 as the reasonable royalty per unit sold to which Arctic Act is entitled. The parties stipulated to the number of units sold since October 16, 2008, to wit, 151,790. *See* ECF No. [149] (trial minutes, May 31, 2016).

Moreover, the jury found, by clear and convincing evidence, that BRP infringed the above-listed claims "with reckless disregard of whether such claim was infringed or was invalid or unenforceable," entitling Arctic Cat to treble damages. Verdict at 4. The issue of subjective willfulness reached the jury after the Court found objective willfulness by clear and convincing evidence, pursuant to the two-part *Seagate* test, in its Order Denying Judgment as a Matter of Law, ECF No. [148] ("Order Denying JMOL") (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed.Cir.2007)). Under the first, objective prong of this test, a patent owner must "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. Under the second, subjective prong, the patentee must demonstrate, also by clear and convincing evidence, that the risk of infringement "was either known or so obvious that it should have been known to the accused infringer." *Id.*[2]

Coincidentally, the Supreme Court issued a ruling shortly after the conclusion of trial that, *inter alia*, discarded the *Seagate* test for willfulness as inconsistent with Section 284 of the Patent Act. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, —— U.S. ——, 136 S.Ct. 1923, 1923, 195 L.Ed.2d 278 (2016) (citing 35 U.S.C. § 284). *Halo* held that "an independent showing of objective recklessness should

[*not*] be a prerequisite to enhanced damages" and that a determination as to enhancement should be governed by a preponderance of the evidence standard. 136 S.Ct. at 1925. Moreover, it concluded that enhancement of damages should be governed by a preponderance of the evidence standard that "has always" governed all other aspects of patent-infringement litigation. *Id.* This decision, importantly, did not impact the validity of the Judgment because, as the Court explained, "where both objective willfulness and subjective willfulness were found by clear and convincing evidence, a more lenient inquiry as to subjective willfulness, without the additional hurdle imposed by the objective willfulness inquiry, and by the lesser preponderance of the evidence standard, would reach the same result." Judgment at 3. Pursuant to the applicable law, including the issuance of *Halo*, the Court held that the Verdict entitled Arctic Cat to the trebling of damages and, thus, directed judgment against BRP and in favor of the Plaintiff for $46,693,639.80, and any applicable interest.

BRP identifies no procedural basis for its Motion under the Federal Rules of Civil Procedure, which would inform the Court's standard of review. Regardless, it asks the Court to vacate the instant Judgment, suggesting that the enhancement of damages under 35 U.S.C. § 284 was improper. Accordingly, the Court takes this opportunity to examine the relevant law, including the Supreme Court's recent decision in *Halo*, entered on the same day as the Court's Judgment[3]—and, thus, to ensure that the Court's decision in which it trebled damages comports with the Supreme Court's new guidance.

---

**2.** Any consideration of the *Seagate* test was limited to the Court's Order Denying JMOL, and oral argument on the same—and did not affect any other aspect of the trial in this case.

**3.** The Court's Final Judgment was entered on June 13, 2016, and issued on the case docket on June 14, 2016.

## II. Authority

█ Section 284 of the Patent Act provides that, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. In 2007, the Federal Circuit adopted the two-part *Seagate* test for determining when a district court may increase damages pursuant to § 284.[4] But, as noted, the Supreme Court rejected the *Seagate* test in *Halo* as "unduly rigid" and held that, instead, "district courts [should] exercise their discretion" as provided in § 284 to determine whether to award enhanced damages. 136 S.Ct. at 1933–34 ("Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test."). Accordingly, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* 136 S.Ct. at 1926; *see SOCIEDAD ESPANOLA DE ELECTROMEDICINA Y CALIDAD, S.A., v. BLUE RIDGE X-RAY CO., INC., DRGERM USA, INC., & DRGEM CORP.*, No. 1:10–CV–00159–MR, 2016 WL 3661784, at *2 (W.D.N.C. July 8, 2016) ("Thus, in *Halo*, the Supreme Court [ ] overruled the objective prong of *Seagate*, leaving the issue of willfulness as solely a factual issue which can readily be addressed by a jury.").[5] Additionally, as explained in the Final Judgment, *Halo*

"disavowed the burden of proof prescribed by *Seagate* and opted for the lesser preponderance of the evidence standard for a patentee to prove an alleged infringer's recklessness." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 193 F.Supp.3d 133, 143, 2016 WL 3365437, at *5 (N.D.N.Y. June 16, 2016) (citing *id.* at 148, at *9).

█ Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S.Ct. at 1932.[6] "[A]lthough there is 'no precise rule or formula' for awarding damages under § 284, a district court's 'discretion should be exercised in light of the considerations' underlying the grant of that discretion." *Halo*, 136 S.Ct. at 1932 (citations omitted). That is, "[a]s with any exercise of discretion, courts should ... take into account the particular circumstances of each case in deciding whether to award damages, and in what amount ... [and] 'be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." *Halo*, 136 S.Ct. at 1933, 1935 (quoting

---

4. Before *Seagate*, determining whether to award enhanced damages was a two-step process in which a jury's finding of willfulness satisfied the first step. *See Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, 1377 (Fed.Cir.2002). "For the second step, the Court exercise[d] its discretion whether to increase damages." *Itron, Inc. v. Benghiat*, No. CIV.99–501(JRT/FLN), 2003 WL 21402608, at *7 (D.Minn. June 16, 2003).

5. Defendant incorrectly argues that *Halo* holds "that the jury has no role in determining willfulness." Reply at 3.

6. Although it is true that, 180 years ago, "Congress did away with automatic trebling of damages," BRP fails to acknowledge that this was for simple infringement, without regard to willful infringement. As *Halo* recounted, the Supreme Court "explained [in 1854] that the change was prompted by the 'injustice' of subjecting a 'defendant who acted in ignorance or good faith' to the same treatment as the 'wanton and malicious pirate.'" *Halo* 136 S.Ct. at 1928 (citing *Seymour v. McCormick*, 16 How. 480, 488, 57 U.S. 480, 14 L.Ed. 1024 (1854)).

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005)).[7]

## III. Discussion

The narrow question before the Court is whether the trebling of damages was proper. Contrary to Defendant's argument that "the Court indicated a perceived requirement to automatically treble the damages in its Final Judgment," treble damages were awarded after comprehensive—perhaps, painstakingly so—consideration of the particular circumstances of this case in the resolution of multiple *Daubert* motions, a summary judgment motion, involving nearly three hours of oral argument, a motion for judgment as a matter of law, and a ten-day trial, after which the jury found willful infringement. Indeed, the Court has now reviewed the full factual record in this case, and evaluated arguments from both parties, on at least three separate occasions. The evidence established that BRP's conduct was so unreasonable as to warrant a finding of "objective recklessness" under *Seagate*—a legal standard that *Halo* rejected for the very reason that it made it too difficult for patent holders to find redress for acts of intentional infringement, and overly constrained district courts from exercising their discretion to punish willful patent infringers under 35 U.S.C. § 284. *See Halo*, 136 S.Ct. at 1933 ("The *Seagate* test aggravates the problem by making dispositive the ability of the infringer to muster a

reasonable (even though unsuccessful) defense at the infringement trial. The existence of such a defense insulates the infringer from enhanced damages, even if he did not act on the basis of the defense."); ECF No. [148] (Order Denying Judgment as a Matter of Law, or "Order Denying JMOL").

■ As a result, the argument that BRP has not had a chance to weigh in on the instant issue rings hollow. Furthermore, the enhancement of damages, which followed and specifically accounted for the decision in *Halo*, was neither automatic nor unprompted. *See* Judgment at 2 (citing 35 U.S.C. § 284 ("[C]ourts *'may increase* the damages *up to three times* the amount found or assessed.'") (emphasis added)). Indeed, the Court is aware of no authority in connection with either 35 U.S.C. § 284 or the Federal Rules of Civil Procedure that requires that the Court consider post-trial briefing before awarding enhanced damages,[8] and BRP has cited no authority requiring as much. Once willful infringement is found, the question of enhancement is firmly committed to the sound discretion of the district court. *See Halo*, 136 S.Ct. at 1931 (quoting *Martin*, 546 U.S. at 136, 126 S.Ct. 704) ("That language [in § 284] contains no explicit limit or condition, and we have emphasized that the word 'may' clearly connotes discretion.") (internal quotation marks omitted); *see also Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed.Cir.1996) (explaining that, once

7. *Halo* also establishes that the Federal Circuit will review enhanced damages awards for abuse of discretion. *Id.* 136 S.Ct. at 1935.

8. Similarly, BRP's briefing suggests that Arctic Cat was required to overcome an additional hurdle—above willfulness—in order to carry its burden in demonstrating that enhancement of damages was warranted. ECF No. [175] (BRP Response) ("As the Supreme Court noted in *Halo*, enhanced damages are reserved for conduct that is 'willful, wanton,

malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.' Arctic Cat has not made that showing here.") (citing *Halo*). This simply is a misstatement of the law, as discussed *infra*. Instead, *Halo* carefully distinguished between a "defendant who acted in ignorance or good faith"—*i.e.*, not willful—and a "wanton and malicious pirate"—*i.e.*, willful. This is not to say that willfulness requires the automatic trebling of damages, but only to emphasize Defendant's faulty framing of the same.

the fact-finder determines that an infringer is "guilty of conduct upon which increased damages may be based[,] . . . the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances"). Where, as here, the Court carefully considered the record evidence and details its reasons for enhancement, its determination regarding enhancement is appropriate. *See* Order Denying JMOL.

Specifically, the Court made the following factual findings and conclusions of law in its Order Denying JMOL:

Here, testimony has been presented conclusively demonstrating that BRP's agent, Mr. Goudrault of BRP's IP Department, knew about the subject patents before they issued. *See State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed.Cir.1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."). Mr. Daujenais and Mr. Goudrault confirmed that fact. Indeed, Mr. Goudrault stated at trial that he made a note in his file to reexamine the patent after its issuance. *See id.* Furthermore, Mr. Goudrault['s] only analysis of the patent—on which BRP exclusively relied—consisted of one conclusory sentence on a page of handwritten notes. The witness, himself, testified that he would not provide such an opinion to one of his clients today. Even if a larger file existed that has gone missing in the years since he conducted his analysis, importantly, Mr. Goudrault is not an attorney. Thus, whatever the quality of his work, BRP cannot legally rely on him to establish the advice of counsel defense. So, despite specifically noting the relevance of Arctic Cat's patent application, BRP chose not to seek advice of qualified and competent counsel until much later, after unsuccessfully attempting to purchase Arctic Cat's patents through a

third party. In *Creative*, the defendant sought advice of counsel before it engaged in potentially infringing activities. Here, by contrast, by the time that BRP got around to getting any sort of opinion from Mr. Marcus, BRP had known about the patents already for eight years. Testimony has established that BRP had been selling potentially infringing products across their entire product line for at least a half a decade. . . .

[C]ases that have found no willfulness despite no advice of counsel have involved much stronger facts than those present in this action, such as where the [Court] finds weak evidence of infringement altogether. . . .

[I]n contrast [to *Eastman Kodak*], BRP attempted to purchase the Arctic Cat patents, rather than planning in good faith to design around them. When those efforts were unsuccessful, BRP recommenced production of the very models for which they had expressed concern regarding potential infringement— and then sought advice of counsel as to non-infringement years after learning about the patents. It was objectively reckless for BRP to rely on an infringement defense where its own experts had already concluded a likelihood of infringement.

BRP's last contention is its invalidity defense. However, this defense depends upon prior art that was squarely before the Patent and Trademark Office when the Office decided to issue the '545 and '969 Patents. Although perhaps not dispositive, the Court cannot find that it was objectively reasonable for BRP to rely on obviousness as a theory of invalidity where the USPTO specifically drew the opposite conclusion—finding that the patent claims were not so obvious as to preclude the issuance of the patents. In light of the foregoing, the Court holds

that BRP acted despite an objectively high risk of infringement.

*Id.* at 10 (citing *Creative Compounds, LLC v. Starmark Laboratories, Inc.*, No. 07–22814–CIV, 2010 WL 2757196, *5 (S.D.Fla.2010)); *Eastman Kodak Co. v. Agfa–Gevaert N.V.*, 560 F.Supp.2d 227, 301–05 (W.D.N.Y.2008), *judgment entered*, 2008 WL 5115252 (W.D.N.Y.2008) *and aff'd*, 351 Fed.Appx. 441 (Fed.Cir.2009)).[9]

It was specifically pursuant to this analysis, as well as the Jury Verdict finding willful infringement and the guidance provided by *Halo* as to willfulness and enhancement of damages, that the Final Judgment was entered. The Court ultimately decided that any further briefing, where the evidence was so clear and overwhelming, would only serve to delay resolution of this case—which had already been pending for nearly twenty-one months. *See* Fed. R. Civ. P. 58(b)(2) ("[T]he court must promptly approve [and enter] the judgment.").

An enhancement of damages often follows a finding of willful infringement. In fact, the Federal Circuit has instructed that, upon such a finding, "courts should provide reasons for *not* increasing a damages award" under § 284. *Jurgens*, 80 F.3d at 1572 (holding that, in light of the jury's findings of willful infringement, trial court abused its discretion in refusing to enhance damages without an explanation of any proper mitigating factors) (emphasis added); *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed.Cir.2012) ("[T]rial court abused its discretion in denying the motion for enhanced damages without independent justification."); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, —— F.Supp.3d ——, ——, 2014 WL 1320154, at *9 (W.D.Pa. Mar. 31, 2014) ("To be clear, a finding of willful infringement does not necessitate the imposition of enhanced damages; however, after such a finding is made, the Court must explain its reasons for declining to award enhanced damages."), *rev'd on other grounds*, 807 F.3d 1283 (Fed.Cir.2015). BRP's own cited authorities establish as much. For example, in *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538 (Fed.Cir.1990), the Federal Circuit affirmed a district court opinion for no enhancement of damages, because "[it] demonstrated that [the court] carefully considered the finding of willful infringement in light of the deterrent function of enhanced damages in reaching [its] determination that enhanced damages were not appropriate to this particular case." *Id.* at 543 (finding that plaintiff "utterly failed to demonstrate that this determination was an abuse of discretion"). And, importantly, there, unlike here, the court found that

---

9. In a concurrence to the majority opinion, Justice Breyer, joined by Justice Kennedy and Justice Alito, wrote separately to express "limits" imposed by section 284 "that help produce uniformity in its application and maintain its consistency with the basic objectives of patent law." *Id.* at 1936 (citing U.S. Const., Art. I, § 8, cl. 8). Therein, he counsels against a bright line rule in which failure of an infringer to obtain advice of counsel is used as proof of willful infringement. *Id.* Explaining this reasoning, the concurrence posits that legal costs "can prevent an innovator from getting a small business up and running. At the same time, an owner of a small firm, or a scientist, engineer, or technician working

there, might, without being 'wanton' or 'reckless' reasonably determine that its product does not infringe a particular patent, or that the patent is probably invalid." *Id.* (citing *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. ——, 133 S.Ct. 2107, 2117, 186 L.Ed.2d 124 (2013). Needless to say, this analysis does not come into play here, as the fact that Mr. Goudrault is not an attorney is only one of many problems with BRP's proffered defenses—and, certainly, a large market leader like BRP cannot rely on this concurrence to claim in good faith that legal costs imposed too great a burden in this instance.

"willfulness was sufficiently close on the evidence." *Id.*

Although not mentioned in *Halo*, the Federal Circuit provided a list of nonexclusive factors to assist in this discretionary determination in *Read Corp. v. Portec Inc.*, 970 F.2d 816 (Fed.Cir.1992)—ultimately, however, the decision hinges on "the egregiousness of the defendant's conduct based on all the facts and circumstances." *Id.* at 826–27 (including: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct). Nonetheless, examination of the *Read* factors—particularly, factors 1, 2, 4, 5, 6, 7, and 9—strongly supports enhancement of damages in this case.

█ The first *Read* factor, whether the infringer deliberately copied the ideas or design of another, weighs in favor of enhancement. *See Read*, 970 F.2d at 827, n. 7 (instructing that, in this context, " 'ideas' and 'design' would encompass, for example, copying the commercial embodiment, not merely the elements of a patent claim"). At trial, it was established that BRP's Fernando Garcia attended a demonstration of Arctic Cat's off-throttle steering technology in Lake Hamilton, Florida, in March 2000, where he was able to test Arctic Cat's actual prototype. BRP's Director of Engineering, Renald Plante, testified that Garcia thought that the prototype "worked well, but on my side, you know, we—or rather, I compared the sys-

tem that we were developing, the OPAS system that we were developing, to the Arctic Cat system and we decided to keep our OPAS [off-power] system and just stop the negotiations with Arctic Cat." ECF No. [182-1] (May 17, 2016, Trial Transcript) at 189:9-190:15. This meeting was approximately four years before BRP began infringing the Arctic Cat patents in 2004—after, evidence has shown, BRP abandoned its own prototype attempting to combine BRP's jet boat technology with a PWC. *See* ECF No. [182-9] (May 31, 2015, Trial Transcript) at 187:23-188:7 ("So Proto-14, as you've heard testified about, was basically an application of the jet boat to—technology to a PWC. And it was tried and it basically reached a dead end and they went a different way."). "That [BRP] developed a very similar system under these circumstances is strong evidence of copying and favors enhancing damages." *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13–CV–366, 2016 WL 3346084, at *17 (E.D.Tex. June 16, 2016).

As to *Read* factor 2, BRP continues to argue that, as soon as it became aware of Arctic Cat's prototype and patent application, it developed a good-faith belief that the patents were invalid based upon BRP's jet boat prior art. However, the trial testimony established exactly the opposite—that is, that BRP failed to properly investigate the scope of the patents and form a good-faith belief that the patents were invalid and/or not infringed. *See* Order Denying JMOL at 5-10; Jury Verdict; *see also* ECF No. [171] ("Boebel Decl." with Exs. 1-12 attached thereto), Ex. 4 (May 18, 2016, Trial Transcript) at 46:6-17 (J. Daunais) (testifying that Defendants knew of the '545 and '969 patents each within about a month after they issued), at 47:5-12, 97:4-9, 102:15-17 (BRP retained lawyer R. Laurie to try to buy the '545 and '969 patents anonymously "just hoping that [Arctic Cat] didn't care about the patents anymore"),

Ex. 5 (May 23, 2016, Trial Transcript) at 45:15-46:9 (D. Goudreault was a patent agent who "investigated" the patents acknowledging that, by law, he is not permitted to give an opinion on patent infringement or validity), at 53:8-54:21, 59:4-21, 67:20-68:9 (acknowledging that the art on which BRP relied was cited on the face of the '969 and '545 patents, and that this meant that the examiner considered that art and concluded that the patents-in-suit were new and different from anything disclosed therein), Ex. 6 (BRP Trial Ex. 74) at BRP133512 & 514 (reflecting brief analysis of '545 and '969 patents); Exs. 7, 8 (BRP Trial Exs. 55, 56) (legal opinion letters not obtained until seven years and eleven years after first infringement, respectively). Indeed, it is disingenuous at best for BRP to claim that it subscribed to the good-faith belief that the patents were invalid where, despite "kn[owing] of both patents within a month or so of their issuance," ECF No. [161-1] (May 18, 2016, Trial Transcript) at 46:9-17, no BRP employee even took the time to review the 31 claims in the issued '545 patent. Boebel Decl., Ex. 5 at 52:24-53:7, 63:3-64:11 (BRP patent agent Goudreault admitting that he reviewed the five claims of the published application for the '545 patent, but not the 31 claims that ultimately issued). Moreover, BRP's notes on the parties' Hamilton meeting, introduced at trial, reflect that Garcia did not assert that any patents were invalid, but instead "asked about our patent and how it would differ from [BRP's] jetboat system." ECF No. [182-15] at AC00008617. Arctic Cat "said [that the] Patent Office would decide." *Id.* And the Patent Office did decide—when it issued the claims of the '969 and '545 patents with undisputed knowledge of the much-discussed Rheault patent (one of the patents on BRP's jet boat technology), which was cited on the face of the '545 and '969 patents. *See, e.g.*, ECF No. [119] (Order Denying Summary Judgment) at 34.

Similarly far-fetched is Arctic Cat's argument, under *Read* factor 3, that BRP's behavior in announcing its intention to appeal the Verdict was unprofessional. BRP certainly did not engage in litigation misconduct, that is, "bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, ... acts that unnecessarily prolong litigation," or violations of court orders by counsel. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed.Cir.2010). In fact, the Court complimented the conduct of the parties' respective attorneys throughout the case. *See, e.g.*, Reply at 8 (citing June 1, 2016, Trial Transcript) at 169:21-25 (referring to counsel as "extremely talented and superb trial attorneys"). Accordingly, this factor weighs in favor of no enhancement. *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, No. 4:01CV1668MLM, 2003 WL 26100272, at *17 (E.D.Mo. July 23, 2004) (finding that factor 3 weighed against enhancement where each side conducted themselves with civility before and during trial).

On the other hand, BRP's size and financial condition—*Read* factor 4—support the Court's decision to treble damages. The Defendant is a market leader in personal watercraft and continues to grow. *See, e.g.*, Boebel Decl., Ex. 9 (May 25, 2016, Trial Transcript) at 149:20-22 (stating that BRP is the market leader "[f]or sure"), Ex. 10 (BRP 2016 Annual Review) at 10-11. Its personal watercraft division, Sea-Doo, ended the 2015 season setting a new market share record and appears to be gaining momentum. *See* Boebel Decl., Ex. 10 at 10. BRP boasts that the Sea-Doo Spark—the very PWC that the jury found to infringe Arctic Cat's patents—"is a prime example [of BRP's growth strategy] as we can directly tie the industry's 26% growth worldwide to its introduction in 2013." *Id.* at 11. In North America, retail sales of the Spark units increased by 40%

in fiscal year 2016, while the industry itself increased by only 10%. *Id.* ("What's more, this increase did not come at the expense of our other 'traditional' PWC models."). Additionally, BRP's global sales for its "Seasonal Products" division alone was up 6.1% over the previous year at over $1.3 billion. *Id.*

According to BRP's 2016 Annual Review, in fiscal year 2016, the Defendant's sales reached the $3.8 billion mark. *Id.* at 2. For the three-month period ending April 30, 2016, BRP revenues increased by $31.8 million, or 3.5%, to $929.9 million. Boebel Decl., Ex. 1 (Press Release: BRP Reports Fiscal Year 2017—First-Quarter Results, June 9, 2016) at 2. Revenues of Seasonal Products for that same three-month period increased by $15.6 million, or 5.8%. *Id.* at 3. BRP reported that "[t]he increase resulted primarily from a higher volume and a favourable mix of PWC sold and from a favourable foreign exchange rate variation of $12 million." *Id.* While gross profit margins decreased in this period, the decrease attributed was primarily due to higher sales programs in snowmobiles and unfavourable foreign exchange variation, partially offset by favourable product mix in PWC[.]" *Id.* at 4 (emphasis added). According to BRP President and CEO, Jose Boisjoli, BRP "significantly outpaced the industry" and is "currently in an excellent position[.]" *Id.* at 2.

Though Arctic Cat is not a small mom-and-pop shop by any stretch,[10] it is a fraction of BRP's size and the smallest company in the markets where the two compete. *See* Boebel Decl., Ex. 11 (May 17, 2016, Trial Transcript) at 91:12-24 (M. Okerlund) ("Of the companies that I've mentioned, Arctic Cat is by far the smallest company. By comparison, Polaris, which is also a Minnesota-based company, is I think about a five billion dollar company. BRP is a billion, multi-billion dollar company. Arctic Cat's a small fraction of their size."); Reply at 10. Where, as here, BRP is a multi-billion dollar enterprise and the market leader—due in significant part to sales of products found to willfully infringe Arctic Cat's patents—enhancement of damages is particularly warranted. *See St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F.Supp. 1304, 1309 (D.Mass.1976) (awarding "double damages," with the caveat that, "[i]f defendant were the giant and plaintiff the small independent, I would make it treble"); *Lightwave Technologies, Inc. v. Corning Glass Works*, 19 U.S.P.Q.2d 1838, 1848–49 (S.D.N.Y.1991) (increasing damages based on infringer's culpability and appropriate compensation to patentee, but awarding double damages because infringer could not afford treble).

Moreover, pursuant to *Read* factor 5, this case was not a close one. As noted in analysis of *Read* factor 2, the trial testimony established that BRP failed to properly investigate the scope of the patents and form a good-faith belief that the patents were invalid and/or not infringed. Pursuant to these facts, the case was not close—as demonstrated by the fact that the Court and jury found clear and convincing evidence of willful infringement under the stringent objective/subjective test of *Seagate*. Accordingly, this factor provides more support for enhancement of damages. *Cf. Crucible, Inc. v. Stora Kopparbergs Bergslags AB*, 701 F.Supp. 1157, 1164 (W.D.Pa.1988) ("[B]ecause the court still considers the [willfulness] question to be a close one ... double, and not treble damages are appropriate.").

---

**10.** Arctic Cat is a publicly-traded company with total net sales in 2015 of over $698 million. *See* Arctic Cat Inc. Form 10-K, Securities & Exchange Commission (May 27, 2016), at 16, available at: http://phx.corporate-ir.net/phoenix.zhtml?c=97941&p=irol-reportsannual.

The duration of BRP's misconduct, that is, *Read* factor 6, also supports the enhancement of the jury's damages award. BRP began infringing the Arctic Cat patents in 2004. After discontinuing the original infringing product line—the 3D personal watercraft—BRP launched an all-new product platform using the infringing technology in 2009. BRP included the infringing OTAS system in its PWC in 2009 and expanded that use over the next four years, such that all BRP PWCs sold since 2013 include the technology that the jury in this case found to willfully infringe Arctic Cat's patents. To be sure, as BRP argues, if Arctic Cat had brought this suit earlier, then the period of infringement would have been shorter. *See* Reply at 9. However, this repurposed laches argument invoked by BRP is a red herring. Any delay by Arctic Cat—and the Court has already determined on two occasions that the delay in this case is insufficient to support a laches defense—was not the cause of BRP's infringement. BRP is responsible for its own actions.

BRP has never engaged in remedial action either, going to *Read* factor 7, such as approaching Arctic Cat about a license or attempting in good faith to design around Arctic Cat's patents. As this Court found, "by the time that BRP got around to getting any sort of opinion from Mr. Marcus, BRP had known about the patents already for eight years. Testimony has established that BRP had been selling potentially infringing products across their entire product line for at least a half a decade." Order Denying JMOL at 9. To address its concerns about infringement, BRP tried to covertly buy the patents "rather than planning in good faith to design around them." *Id.* at 10. BRP likewise did not voluntarily cease making or selling the infringing products at any point or take steps to implement a non-infringing alternative. *Cf. Intra Corp. v. Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439 (E.D.Mich.

1987) (damages only doubled because defendant "voluntarily ceased manufacture and sale of infringing systems during the pendency of this litigation"), *aff'd without opinion*, 862 F.2d 320 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989).

The Defendant's motivation for harm, pursuant to *Read* factor 8, is neutral in this analysis as the evidence is inconclusive. Although BRP's conduct was egregious in numerous respects, Arctic Cat has failed to show that BRP's infringement was motivated by a desire to harm Arctic Cat, at least beyond the Defendant's secretive attempt to purchase Arctic Cat's patents. As a result, factor 8 does not weigh significantly in either direction and, thus, does not impact the instant determination.

BRP's attempt to conceal its misconduct, however, does support enhancement of damages pursuant to *Read* factor 9. At trial, evidence was adduced that BRP hired "a guy named Ron Laurie" in 2011 to try to buy the patents from Arctic Cat, because the Defendant was "worried that after reviewing the patents Arctic Cat would file a lawsuit against BRP for infringement." ECF No. [161-1] (May 18, 2016, Trial Transcript) at 47:5-18, 97:10-14. The Defendant offered $40,000 initially, which amount was "subsequently raised that to $60,000. And it didn't work." *Id.* at 102:13-14. So, instead, BRP resorted to hoping that Arctic Cat "didn't care about these patents anymore" and, therefore, would let them expire. *Id.* at 102:8-10, 15-17 ("A. Well, also we were thinking that they could even let them all go expire. But it was not happening yet. So that's why we wanted to get a shot at buying them. ... Q. So is it fair to say you were just hoping they didn't care about these patents anymore? A. That's what we were hoping."). In contrast, the jury was introduced at trial to a third-party company in the PWC industry, Honda, which addressed the

same conundrum in an entirely different manner. Rather than attempt any sleight of hand, Honda entered into a licensing agreement with Arctic Cat when it feared that its products might infringe the Plaintiff's patents. Particularly in light of this comparison, BRP's behavior strongly suggests a lack of transparency and good faith that weighs in favor of enhanced damages.

Ultimately, *Read* factors 1, 2, 4, 5, 6, 7, and 9 compellingly support the Court's decision to treble damages.[11] Though *Read* factor 3 cuts the other way, an argument that no enhancement is warranted based on factor 3 alone—particularly, as it concerns conduct during the litigation, rather than during the period of underlying infringement—is entirely unconvincing. In this case, "the egregiousness of the defendant's conduct based on all the facts and circumstances" overwhelmingly supports enhancement of damages. *Read*, 970 F.2d at 826–27. "The evidence at trial revealed a degree of dismissiveness of [Plaintiff's] patent rights and disrespect of the value the law places on protection of intellectual property that was exceptional. Enhanced damages are merited to punish this conduct and deter similar behavior, and to promote appropriate regard for patent rights." *Applera Corp. v. MJ Research Inc.*, 372 F.Supp.2d 233, 247 (D.Conn. 2005).

## IV. Conclusion

Trial in this case has established by clear and convincing evidence—a higher standard than is now applicable to a willfulness inquiry under *Halo*—that BRP willfully infringed Arctic Cat's patented off-throttle steering technology in contravention of the United States Patent Act. It did so with full knowledge of Arctic Cat's patent rights, without so much as approaching Arctic Cat about a license, as is demonstrated by, *inter alia*, its hiring of an agent to surreptitiously buy Arctic Cat's patents without disclosing BRP as the intended buyer. Suffice it to say, BRP is the wanton infringer that the Supreme Court sought to punish through its relaxation of the standard governing willfulness and enhancement of damages. *Halo*, 136 S.Ct. at 1933–34 ("Section 284 permits district courts to exercise their discretion in a manner free from the inelastic constraints of the *Seagate* test. Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct."). It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [158]**, is **DENIED**. The Court will address the parties' other post-trial motions by separate order.

**DONE AND ORDERED** in Miami, Florida, this 27th day of July, 2016.

---

11. Arctic Cat urges the Court to consider in its analysis under the *Read* factors the alleged fact that BRP continues to infringe the subject patents. *See* ECF No. [170] (Response) at 13 ("In 2014, after this suit was filed, BRP continued to infringe; in fact, it expanded its infringing use with the new Spark line of products. And even now—after the jury verdict—BRP continues to trample on Arctic Cat's patent rights."). However, this is the first time that the Court has heard such allegations—after the conclusion of trial, when the case has been pending for almost twenty-one months. Before trial, the parties expressly stipulated to the number of infringing products at issue in this case since October 16, 2008. *See* ECF No. [149] (trial minutes, May 31, 2016). Accordingly, Arctic Cat's belated attempt to abandon this stipulation, on which the Court and the parties relied, is not well-taken.